UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASIMO CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>JOE E. KIANI, RODERICK WONG, NAVEEN YALAMANCHI, RTW INVESTMENTS, LP, RTW INVESTMENTS GP, LLC, RTW MASTER FUND, LTD., RTW OFFSHORE FUND ONE, LTD., RTW ONSHORE FUND ONE, LP, RTW INNOVATION MASTER FUND, LTD., RTW INNOVATION OFFSHORE FUND, LTD., RTW INNOVATION ONSHORE FUND, LP, and RTW FUND GROUP GP, LLC,<br><br>Defendants. | No. 24 Civ. 8147 (AKH)<br><br>**ORAL ARGUMENT REQUESTED** |

**RTW DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY SCHULTE ROTH & ZABEL LLP**

**MICHELMAN & ROBINSON, LLP**
Sanford L. Michelman, *admitted pro hac vice*
Warren A. Koshofer
Molly Wolfe
Telephone: (212) 730-7700
605 Third Ave, 30th Floor
New York, NY 10158
smichelman@mrllp.com
wkoshofer@mrllp.com
mwolfe@mrllp.com

Mona Z. Hanna, *admitted pro hac vice*
Todd Stitt, *admitted pro hac vice*
Telephone (714) 557-7990
17901 Von Karman Ave, 10th Floor
Irvine, CA 92614
mhanna@mrllp.com
tstitt@mrllp.com

*Attorneys for Defendants Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC*

# TABLE OF CONTENTS

Page(s)


I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 9

A. The RTW Clients' Retention of Schulte as Regulatory and Securities Counsel ..... 9

B. Schulte Advises the RTW Clients Regarding So-Called "Empty Voting" ..... 10

C. Schulte's Conflicted Representation of Politan ..... 12

D. Schulte's Representation of Plaintiff ..... 13

E. Schulte Refuses to Withdraw Voluntarily ..... 14

III. LEGAL STANDARD ..... 15

IV. ARGUMENT ..... 17

A. Schulte's Concurrent Representation of the RTW Clients and Plaintiff Presents an Inescapable Conflict of Interest that Demands Disqualification ..... 17

1. The Representation is Prima Facie Improper ..... 17

2. Schulte's Representation of Plaintiff Is Incompatible with Its Duty of Loyalty to The RTW Clients ..... 19

3. Schulte's Concurrent Representation of Plaintiff Presents a Real Risk of Trial Taint ..... 21

4. Even Successive Representations of the RTW Clients and Plaintiff Demands Schulte's Disqualification ..... 22

5. Plaintiff's Allegations Against the RTW Parties Are Substantially Related to Schulte's Representation of The RTW Clients ..... 22

6. Schulte's Litigation Team Had Access to the RTW Clients' Relevant Privileged and Confidential Information for Months ..... 23

B. Disqualification Affects All of Schulte ..... 24

C. Schulte's Purported Advance Conflicts Waiver Does Not Preclude Disqualification ..... 26

1. The Advance Waiver Expressly Carves Out Circumstances Such as Those Presented Here ..... 26

2. The Advance Waiver Is Invalid Because the RTW Clients Lacked Informed Consent ..... 27

V. CONCLUSION ..... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
2020 WL 209903 (S.D.N.Y. Jan. 14, 2020) ....28

*Ameriway Corp. v. Chen*,
2024 WL 4362731 (S.D.N.Y. Oct. 1, 2024) ....26

*Anderson v. City of New York*,
2017 WL 4382163 (S.D.N.Y. Sept. 29, 2017) ....8, 17, 22, 23, 25

*Cinema 5, Ltd. v. Cinerama, Inc.*,
528 F.2d 1384 (2d Cir. 1976) ....18, 20, 25

*Cypress Holdings, III, LP v. Sport-BLX, Inc.*,
2022 WL 4239937 (S.D.N.Y. Aug. 23, 2022) ....7, 8, 12, 16, 17, 22, 23, 24

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
722 F. Supp. 2d 295 (E.D.N.Y. 2010) ....27, 28, 29

*First NBC Bank v. Murex, LLC*,
259 F. Supp. 3d 38 (2017) ....5, 6, 7, 9, 16, 18, 19, 20, 21, 22, 25, 26, 28

*GSI Com. Sols., Inc. v. BabyCenter, LLC*,
618 F.3d 204 (2d Cir. 2010) ....16, 18, 19

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
409 F.3d 127 (2d Cir. 2005) ....8, 15, 16, 17, 19, 25

*Hull v. Celanese Corp.*,
513 F.2d 568 (2d Cir. 1975) ....8, 16

*United States v. Morris*,
2018 WL 2088301 (S.D.N.Y. May 4, 2018) ....7, 25

*United States v. Prevezon Holdings Ltd.*,
839 F.3d 227 (2d Cir. 2016) ....24

*In re WB Bridge Hotel LLC*,
656 B.R. 733 (Bankr. S.D.N.Y. 2024) ....24

**Other State Cases**

*Masimo Corp. v. Politan Capital Management, LP, et. al*,
Case No. 8:24-cv-01568 ....14

**Statues**

**New York Rules of Professional Conduct,**

Rule 1.7, Cmt. 18 ....................27
Rule 1.7, Cmt. 22 ....................27, 28
Rule 1.9(a)....................7, 17, 22
Rule 1.10(a)....................8, 17, 25

Pursuant to the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, the New York Rules of Professional Conduct ("NY Rules"), and the American Bar Association Model Rules of Professional Conduct ("ABA Rules"), defendants RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC (collectively, the "RTW Clients"), Roderick Wong ("Dr. Wong"), and Naveen Yalamanchi ("Dr. Yalamanchi") (together with Dr. Wong and the RTW Clients, the "RTW Parties") hereby request that this Court disqualify the law firm Schulte Roth & Zabel LLP ("Schulte") from representing Plaintiff Masimo Corporation ("Plaintiff" or "Masimo") in the action now pending before this Court (the "Politan-Masimo Action").

## I. PRELIMINARY STATEMENT

It is axiomatic that lawyers do not sue their own clients and particularly do not sue them for following advice that those lawyers provided. Yet shockingly, that is exactly the situation we have here. Schulte sued its current RTW Clients concerning the very topics on which Schulte advised them. Worse yet, Schulte has gone nuclear against its RTW Clients by blocking the production of documents that should be exculpatory to the RTW Parties, and is compromising their attorney-client privilege. Schulte's conduct is not only jarring, but also prohibited by the New York and ABA Rules (collectively, the "Ethical Rules") governing lawyers' professional and ethical obligations. Schulte must be disqualified.

In October 2021, the RTW Clients contacted Schulte to interview it for the purpose of determining whether it wanted Schulte to serve as its legal counsel. Based on affirmative representations and promises made by Schulte in its engagement agreement on November 4, 2021,

the RTW Clients retained Schulte as their legal counsel. Specifically, RTW Investments, LP retained Schulte to represent itself and the rest of the RTW Clients "in connection with general investment advice, securities law and related matters." (Declaration of Alice Lee ("Lee Decl."), ¶ 4; Ex. L, RTW Engagement Letter, at 1.) In doing so, Schulte made the following *affirmative* representations in the RTW Engagement Letter:

1. "As this representation proceeds, *we will seek to* ***protect your interests*** . . . "
2. "[T]he Firm . . . may represent clients in future matters, including other clients and matters that are adverse to you, *so long as the Firm is not then engaged by you in that matter* in which the Firm would be representing other clients ***in a manner*** *that would be* ***directly adverse*** *to you.*"
3. "The foregoing paragraph includes representing other clients in a matter in which we are representing you *as long as any required* ***information barriers*** *are established* among the attorneys within the Firm representing such clients."
4. "This is, of course, premised on the Firm's ***adherence to its professional obligation*** not to disclose any confidential information or to use it for another party's benefit."
5. "Without your prior consent, the Firm may represent another client in a litigation or similar proceeding directly adverse to you while you are a client of the Firm *so long as the firm is* ***not then representing you in the matter***. "Directly adverse" means that you and another client of the Firm are *actually on* ***opposite sides*** *of a litigation or proceeding*."
6. "*[A]s long as the Firm* **acts consistently** *with the foregoing*, you will not . . . assert that the Firm's representation of you (or possession of privileged and confidential

information concerning you) is a basis for disqualifying the Firm from representing another client."

(*Id.*) Schulte has violated each of these representations.

From January 2023 to the filing of this Politan-Masimo Action in October 2024, Schulte provided over *300* hours of advice to the RTW Clients concerning [redacted] In fact, *seventeen* different Schulte lawyers advised the RTW Clients regarding [redacted] as well. (Lee Decl. ¶ 5; Ex. M, Schulte Invoices.) The RTW Clients relied on Schulte's advice and acted in accordance with it.

Simultaneously, Schulte was representing Politan Capital Management, LP ("Politan") on the very same topics. While this alone is not necessarily problematic, it is here because Schulte was, shockingly, advising Politan on how it should sue the RTW Clients, either directly or through Masimo. And in fact, on July 23, 2024, Schulte, representing Politan, filed a lawsuit in Delaware (the "Schulte-Politan Action"). Even though the RTW Clients were not named as defendants, Schulte nevertheless accused RTW Investments, LP of [redacted] The RTW Parties only found out that Schulte was representing Politan a month later when they received a subpoena from Schulte demanding production "within 2 days of receipt of the subpoena."[1] (Lee Decl. ¶ 10; Ex. P, August 28, 2024 Politan Subpoena.) Schulte

[1] The RTW Engagement Letter prohibited Schulte from issuing the subpoena as it was "directly adverse" to the RTW Clients, which is defined by the agreement to mean "that you and another client of the Firm are actually on opposite sides of a litigation or proceeding." (Ex. L, RTW Engagement Letter, at 4.) Obviously, Schulte violated this covenant when it represented Politan (a Schulte client) in litigation or proceeding against the RTW Clients (a Schulte client).

then filed an amended complaint in the Schulte-Politan Action reiterating its allegations against RTW Investments, LP in even more aggressive terms. No fewer than *eleven times*, Schulte alleged that RTW Investments, LP manipulated or attempted to manipulate the shareholder vote, and further accused its own client of "colluding" and "working secretly" with Masimo's CEO, Joseph Kiani. Amazingly, Schulte then sought leave from the Delaware Chancery Court to add RTW Investments, LP, as a named defendant, but ultimately dismissed the Schulte-Politan Action on October 25, 2024 and replaced it with the Politan-Masimo Action filed in this Court that same day. Schulte's aggressive attacks on the RTW Clients "***in a manner***" that is "***directly adverse***" to RTW Clients are clearly in violation of the law, the Ethical Rules, and the RTW Engagement Letter.

In the Politan-Masimo Action, Schulte sued all of its RTW Clients, as well as Dr. Wong, and Dr. Yalamanchi. Complaint makes salacious allegations against Schulte's own RTW Clients that malign their reputation and attack their integrity for following advice and counsel *Schulte provided to them*. Throughout the Complaint, Schulte alleges that the RTW Clients [redacted]— the very things on which Schulte advised the RTW Clients. If that is not stunning enough, Randall T. Adams is the lead Schulte partner suing the RTW Parties and the same Schulte partner named in Schulte's invoices to the RTW Clients as providing [redacted] (Lee Decl. ¶ 5; Ex. M, Schulte Invoices.)

On November 25, 2024, the RTW Clients issued a request pursuant to 8 Del. C. § 220 (the "220 Demand") for documents that establish the frivolity of the Politan-Masimo Action. In a letter dated December 4, 2024, Schulte responded in this "proceeding" by again going nuclear on its own RTW Clients. (Declaration of Sanford Michelman ("Michelman Decl."), ¶ 6; Ex. T, Schulte's December 4, 2024 220 Demand Response.) In violation of the RTW Engagement Letter and the

Ethical Rules, Schulte alleges that its own RTW Clients are not credible, and that they presented the 220 Demand for improper purposes and are seeking through pretext to gain leverage over Masimo via pre-litigation discovery. (*Id.*) Of course, none of this is true—but it is yet another example of Schulte acting "in a manner" that is "directly adverse" to the RTW Clients to damage them. Schulte's rhetoric in its December 4, 2024 220 Demand Response further maligns the RTW Clients and clearly creates the "appearance of the law firm's disloyalty—if not a degree of hostility—towards" its own clients. *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 70 (2017) (firm's inclusion of "extraneous allegations" about former client were "difficult to view . . . as other than a gratuitous swipe").

On November 15, 2024, doubling down on its conflicts in response to the RTW Clients' November 8, 2024 letter requesting that Schulte recuse itself, Schulte made the following stunning admissions demonstrating its breach of the RTW Engagement Letter and Ethical Rules:

1. "Since 2021, Schulte has periodically advised RTW with respect to [redacted]
2. "In the summer of 2024, Alice Lee (RTW's Senior Counsel) contacted Ms. Schwartz [redacted]
3. "[W]hen Schulte filed the [Schulte-Politan Action] on behalf of Politan, RTW [redacted]
4. "Specifically, [redacted]

5. "RTW has continued to consult with Ms. Schwartz with regard to [redacted]

6. "[I]n August 2024 . . . Schulte put in place an ethical wall between the litigation group that was handling the Chancery Court Action and lawyers (including Ms. Schwartz) who had provided advice to RTW . . ."

(Michelman Decl. ¶ 5; Ex. S, Schulte's November 15, 2024 Refusal to Withdraw.)

Under no reading of the Politan-Masimo Complaint, Schulte's December 4, 2024 response to the 220 Demand, or the Schulte November 15, 2024 response to the demand for withdrawal is Schulte remotely: (1) "*seek[ing] to protect your interests*", (2) adhering to its representation that "*so long as the Firm is not then engaged by you in that matter* in which the Firm would be representing other clients ***in a manner*** that would be ***directly adverse*** to you," (3) insuring the erection of *required information barriers* among the attorneys within Schulte representing Plaintiff or Politan; or (4) adhering *to its professional obligation* not to disclose any confidential information or to use it for another party's benefit, as promised in the RTW Engagement Letter. (Lee Decl. ¶ 4; Ex. L) Clearly, Schulte's conduct is in direct violation of the RTW Engagement Letter and the Ethical Rules as highlighted below.

*First*, Schulte's concurrent representation of Plaintiff and the RTW Clients is *prima facie* improper and has already created an "actual or *apparent* conflict in loyalties and diminution in the vigor of [Schulte's] representation" of the RTW Clients. *Murex, LLC*, 259 F. Supp. 3d at 57 (internal quotations omitted).

*Second*, disqualification is warranted because Plaintiff's allegations against the RTW Parties are "substantially related" to the very subject matter on which Schulte provided legal counsel to the RTW Clients—specifically regarding [redacted]

*Cypress Holdings, III, LP v. Sport-BLX, Inc.*, 2022 WL 4239937, at *4 (S.D.N.Y. Aug. 23, 2022); *see also* NY Rule 1.9(a) (attorney may not represent a party in "a substantially related matter in which that person's interests are materially adverse to the interests of the former client"); ABA Rule 1.9(a) (lawyer shall not represent another person in the "same or substantially related matter in which the person's interests are materially adverse to the interests of the former client.").

*Third*, as acknowledged in Schulte's November 15, 2024 response letter, Schulte knew of the conflict of interest on July 3, 2024, when RTW Senior In-House Counsel Alice Lee contacted Schulte partner, Adriana Schwartz. (Michelman Decl., ¶ 5; Ex. S, Schulte November 15, 2024 Refusal to Withdraw, at 2-3.) At a bare minimum, Schulte was required to immediately erect an ethical wall. However, Schulte admits it did not do so until August 2024. (*Id*. at 7; *see also* Lee Decl. ¶ 6-8, 14 (Adriana Schwartz admitted to Alice Lee in a telephone conversation on September 5, 2024, that Adriana Schwartz was only "walled off" from the Schulte litigation team "last week"—*i.e.*, the week of August 25, 2024).) Worse yet, Randall Adams, the lead litigator against the RTW Clients, appears by name in Schulte's own invoices as having advised the RTW Clients [redacted] in June 2024, so "walling" him off in August 2024 means nothing. It is insufficient to allegedly impose an ethical wall *after* an attorney becomes compromised by conflicted representations. *See United States v. Morris*, 2018 WL 2088301, at *1 (S.D.N.Y. May 4, 2018) (factors in the analysis of an ethical wall's sufficiency "include the timing of any screening mechanisms"); *Murex*, 259 F. Supp. 3d at 73 ("ethics wall" erected after lawyers were exposed to confidential communications was insufficient to rebut presumption of shared confidences). The sheer optics of Schulte's behavior taints the legal profession and will erode client confidence in retaining lawyers across the State.

*Fourth*, all Schulte attorneys are subject to disqualification, as "an attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *accord. Anderson v. City of New York*, 2017 WL 4382163, at * 3 (S.D.N.Y. Sept. 29, 2017); *see also* NY Rule 1.10(a); ABA Rule 1.10(a). As noted, Schulte's untimely implementation of an ethical wall is insufficient to overcome this presumption. As this Court has previously held, even the specter of doubt "should be resolved in favor of disqualification." *Cypress Holdings*, 2022 WL 4239937, at * 2 (internal quotations omitted); *accord*. *Hull v. Celanese Corp*., 513 F.2d 568, 571 (2d Cir. 1975). The RTW Clients did not bargain to be put in this position; Schulte created the issue, and should be disqualified.

*Fifth*, the Schulte RTW Engagement Letter is clear on what Schulte cannot do even with an alleged advance waiver of conflict. Schulte expressly acknowledged that it could not represent other clients in existing or future matters if Schulte is, as here, "then engaged by [the RTW Clients] in the matter in which [Schulte] would be representing the other clients ***in a manner*** that would be ***directly adverse*** to [the RTW Clients]." (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 3 (emphasis added).) It is beyond dispute that Schulte is engaged by the RTW Clients and simultaneously representing Plaintiff in this action "*in a manner that is directly adverse to the RTW Clients*." That should be the end of the inquiry, and Schulte should immediately be disqualified.

*Finally*, if the Politan-Masimo Action proceeds to discovery, the RTW Clients being deposed will testify that their strategies and investment decisions were based, in part, on advice provided by Schulte, including Randall Adams. What does Schulte do then? Instruct its own client not to reveal attorney-client privilege, thereby favoring Politan-Masimo? Does Schulte force

the RTW Clients to reveal attorney-client privilege? This entire case will be riddled with Schulte's ethical challenges, damaging *both* of its clients—not just the RTW Clients. In addition, if Schulte remains in the case, the RTW Clients will immediately demand and subpoena all internal communications among Schulte lawyers regarding the advice provided to RTW Clients and seek their depositions. The RTW Clients are entitled to know if there are emails or other communications between Adriana Schwartz and Randall Adams, by way of example, discussing the RTW Clients, [redacted] and the allegations first advanced by Politan and then reiterated by Plaintiff in this Politan-Masimo Action. Clearly, Schulte must be disqualified.

Schulte should never have undertaken its representation of Plaintiff in this action, as it has caused Schulte to abandon its loyalties to its longstanding RTW Clients, and to act directly adverse to the RTW Clients' interests. In light of this Court's imprimatur that "the interest in assuring the integrity of this litigation must be paramount," Schulte must be disqualified. *Murex*, 259 F. Supp. 3d at 74.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>The RTW Clients' Retention of Schulte as Regulatory and Securities Counsel</u>

The RTW Clients retained Schulte in November 2021 to "represent and advise" them "in connection with general investment advice, securities law and related matters (the 'Matter')." (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 1.) The RTW Engagement Letter specifically defines the "matter" as "general advice, securities law and related matters." (*Id.*) It contained a limited advance waiver of "certain"—not all—conflicts, which specifically does not apply where, as here, Schulte was engaged by the RTW Clients "***in the matter in which the Firm would be representing the other clients in a manner*** that would be ***directly adverse*** to [the RTW Clients]." (*Id.* at 4 (emphasis added).) Nor does it apply where, as here, Schulte is representing another client "in a

litigation or other proceeding" "directly adverse" to the RTW Clients if Schulte is "representing [the RTW Clients] in that matter." (*Id.* at 4, 5.)

For three years, the RTW Clients relied on Schulte's legal counsel regarding [redacted] (Lee Decl. ¶ 5; Ex. M, Schulte Invoices ("professional services rendered" included, *inter alia*, [redacted]).) As evidenced by Schulte's invoices, its services to the RTW Clients also encompass [redacted] (*Id.*) In the course of this three-year relationship, Schulte has become familiar with the RTW Clients' internal operations, practices, and compliance process.

### B. <u>Schulte Advises the RTW Clients Regarding So-Called "Empty Voting"</u>

On July 3, 2024, Alice Lee contacted Adraina Schwartz regarding [redacted] (Lee Decl. ¶ 6; Ex. O, July 3, 2024 [redacted] Email with Press Release.) In the course of that conversation, Alice Lee disclosed to Adriana Schwartz [redacted] (Lee Decl. ¶¶ 6-7.) At the start of that conversation, [redacted] (Lee Decl. ¶ 7; Michelman Decl. ¶ 5; Ex. S, Schulte's November 15, 2024 Refusal to Withdraw, at 2-3 (conceding that Ms. Schwartz told Ms. Lee [redacted]).)[2]

[2] Schulte claims that it explained [redacted] (Michelman Decl. ¶ 5; Ex. S, Schulte's November 15, 2024 Refusal to Withdraw, at 2-3.)

Schulte claims that Adriana Schwartz "immediately shut down the conversation" upon [redacted], but phone records show this is false. Adriana Schwartz and Alice Lee continued talking for a total of 14 minutes, [redacted] (Lee Decl. ¶ 6; Ex. N, Lee Phone Records (reflecting calls with 212-756-2346 on July 3, 2024 at 1:07 pm and 1:17 pm, lasting 9 and 5 minutes respectively).) Adriana Schwartz also emailed Alice Lee [redacted] (Lee Decl. ¶¶ 6-8; Ex. N, Lee Phone Records; Ex. O, July 3, 2024 [redacted] Email with Press Release.) Despite Schulte's attempts to obfuscate the facts, these phone calls and accompanying email establish that Schulte advised the RTW Clients [redacted]

Unbeknownst to the RTW Clients, ***on the exact same day*** [redacted] Schulte's client Politan accused Plaintiff's CEO and an unnamed investor [redacted] in a nonpublic letter sent to Plaintiff. (Lee Decl. ¶ 9; July 3, 2024 Politan Letter, Ex. B to the Declaration of Warren Koshofer in Support of the RTW Defendants' Motion to Dismiss, ECF No. 44.) Politan further accused the unnamed investor of [redacted] (*Id.*) In a second letter sent little more than *a week later*, Politan publicly identified the formerly unnamed investor as "RTW Investments." (*See* Ex. E, July 12, 2024 Politan Letter, ECF No. 44.) The RTW Clients' investment strategies, [redacted] were

This is false: [redacted] The RTW Clients learned that fact upon receiving a subpoena from its own counsel nearly two months later.

not public information. *Yet, immediately after Schulte advised the RTW Clients regarding* [redacted] *Schulte's Politan suddenly possessed this **non-public** information.*

The timing of Politan's allegations against "RTW Investments" raises a serious question regarding the potential sharing of the RTW Clients' confidences, especially since there was admittedly no ethical wall. Under such circumstances, even the specter of doubt "should be resolved in favor of disqualification." *Cypress Holdings, III, LP v. Sport-BLX, Inc.*, 2022 WL 4239937, at * 2 (S.D.N.Y. August 23, 2022) (quotations omitted).

Politan claimed that it was able to identify "RTW Investments" in its July 12, 2024 letter "based on" a report by Glass Lewis & Co. ("Glass Lewis"), a proxy advisory firm. (Ex. E, July 12, 2024 Politan Letter, ECF No. 44.) But on July 12, 2024 Glass Lewis *knew nothing* about the RTW Clients' actual economic exposure, as it did not have access to the Depository Trust and Clearing Company ("DTCC") reports or "other reports that made plain that empty voting had occurred." (Compl. ¶ 67.) Thus, Politan's Glass Lewis façade does not pass muster.

### C. <u>Schulte's Conflicted Representation of Politan</u>

On July 23, 2024, Schulte filed the Schulte-Politan Action against Mr. Kiani, in which it accused its client RTW Investments, LP of [redacted] (*See* Schulte-Politan Original Complaint, Transaction ID 73765211, dated July 23, 2024, ¶¶ 59-61.) The RTW Clients only found out that Schulte was representing Politan in a "litigation or proceeding" *a month later*, when they received an unreasonable and wholly improper

subpoena from Schulte demanding production "within 2 days of receipt of the subpoena[.]" (Lee Decl. ¶ 10; Ex. P, August 28, 2024 Politan Subpoena, at 2, Sched. A at 6-7.)

Schulte reiterated its allegations against RTW Investments, LP even more aggressively in an amended complaint in September 2024, and also added a cause of action seeking a declaratory judgment "that any votes cast by RTW that exceed RTW's economic interest in the Company are invalid." (Schulte-Politan Action Amended Complaint, Transaction ID 74275920, filed September 10, 2024, at ¶¶ 17, 61, 102, 86, 107, 115, 118, 142-46, 149, Prayer for Relief (iv).) Shortly thereafter, Schulte moved the Delaware Chancery Court for permission to add RTW Investments, LP, as a named defendant. (*See* Schulte-Politan Action Motion to File Second Amended Complaint, Transaction ID 74346507, filed September 17, 2024.) But rather than add the RTW Clients as a party, Schulte dismissed the action on October 25, 2024 and instead filed this one. (*See* Schulte-Politan Action Notice of Voluntary Dismissal, Transaction ID 74871616, filed October 25, 2024.)

### D. Schulte's Representation of Plaintiff

On September 19, 2024, Politan successfully gained control of Plaintiff's Board and Mr. Kiani resigned his position as CEO. A month later Schulte filed the Complaint in this Politan-Masimo Action, naming the RTW Clients as defendants and, in addition to Politan's tired "empty voting" narrative, bringing causes of action for "failure to file" a Schedule 13D and "failure to disgorge short-swing profits" under Section 16(b). (Compl. at ¶¶ 25-26, 36, 42, 88.)

Schulte's representation of Plaintiff is just a repackaging of its representation of Politan in the Schulte-Politan Action, now adding the RTW Clients as parties. The very same Schulte litigation team representing Plaintiff here—Michael Swartz, Frank Olander, and Randall Adams—are currently defending Politan *against* a suit filed by Plaintiff in the Central District of California.

(Motion to Dismiss, ECF No. 43, at 10 n.7; *see also Masimo Corp. v. Politan Capital Management, LP, et. al*, Case No. 8:24-cv-01568, United States District Court for the Central District of California ("CD Cal Action")). It is plain as day that Schulte's representation of Plaintiff in this Politan-Masimo Action is in conflict with the RTW Clients' interests.

That conflict has already begun to impact this action in material ways: on November 25, 2024, the RTW Parties issued the 220 Demand for inspection of Plaintiff's books and records to investigate the corporate mismanagement, waste, and wrongdoing that resulted in Plaintiff's filing of this Politan-Masimo Action. (Michelman Decl. ¶¶ 6.) Schulte responded on December 4, 2024 with an outright refusal to provide any materials to its clients, even while acknowledging that such books and records would "further [the RTW Parties'] own interests[.]" (*Id.*; Ex. T, Schulte's December 4, 2024 220 Demand Response, at 4.)

**E. <u>Schulte Refuses to Withdraw Voluntarily</u>**

Rather than adhere to its own professional standards, Schulte repeatedly brushed off its clients' concerns and contorted the terms of the RTW Engagement Letter to suit its own needs.

Schulte purposely misreads the purported advance waiver. When the RTW Clients discovered that Schulte was representing Politan, General Counsel Dar Patel immediately pointed to the RTW Engagement Letter's prohibition against Schulte representing another client "in a manner that would be directly adverse to" the RTW Clients if Schulte is also engaged by the RTW Clients in that matter. (Lee Decl. ¶¶ 12-13; Ex. Q, September 3, 2024 [redacted] Email Chain.) As Mr. Patel correctly noted, [redacted] (*Id.* (emphasis added).) Incredibly, Adriana Schwartz [redacted]

[redacted] (Lee Decl. ¶ 13; Ex. Q, September 3, 2024 [redacted] Email Chain (emphasis added)). This is simply not credible since the RTW Engagement Letter prohibits Schulte from being adverse to the RTW Clients on the same "matter," which is expressly defined to include "securities laws."

Schulte further violated its own standards by failing to establish the "required information barriers . . . among the attorneys within the Firm representing" clients adverse to the RTW Clients. (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 4.) Even though Schulte admits it knew about a conflict of interest between the RTW Clients and Politan by July 3, 2024 ***at the latest***, the firm waited ***eight more weeks*** before implementing an ethical wall in August 2024. (Lee Decl. ¶¶ 7, 14; Ex. S, Schulte's November 15, 2024 Refusal to Withdraw, at 2-3, 7.) And again, Plaintiff's counsel and Schulte partner Randall Adams provided legal advice to the RTW Clients specifically regarding the RTW Clients' [redacted] back in June 2024. (*See* Lee Decl. ¶ 5; Ex. M, Schulte Invoices.)

Yet, when the RTW Parties formally requested that Schulte voluntarily withdraw from its representation of Plaintiff and advised that Schulte's refusal to do so would force them to move for Schulte's disqualification, Schulte refused. (Michelman Decl. ¶¶ 4-5; Ex. R, RTW Parties' November 8, 2024 Withdrawal Request; Ex. S, Schulte's November 15, 2024 Refusal to Withdraw.)

Schulte has thus forced the RTW Parties to move for disqualification by court order.

## III. <u>LEGAL STANDARD</u>

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). In exercising this power, the Court must

attempt to balance a client's right to freely choose his counsel against the need to maintain the highest standard of the profession. *Id*. at 132. Disqualification is warranted "[w]here an attorney's conduct tends to taint a trial," *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (2017), and "in the disqualification situation, ***any doubt is to be resolved in favor of disqualification***." *Hull v. Celanese Corp*., 513 F.2d 568, 571 (2d Cir. 1975) (emphasis added); *accord. Cypress Holdings, III, LP v. Sport-BLX, Inc*., 2022 WL 4239937, at * 2 (S.D.N.Y. August 23, 2022). "In the end, after careful analysis, a motion to disqualify is 'committed to the sound discretion of the district court.'" *Id*.

It is *prima facie* improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. *Hempstead*, 409 F.3d at 133; *accord*. *Murex*, 259 F. Supp. 3d at 57. Such concurrent representation tests "the duty of undivided loyalty which an attorney owes to each of his clients, who are entitled to the lawyer's undivided allegiance and faithful, devoted service." *Murex*, 259 F. Supp. 3d at 57 (internal citations omitted). Under such circumstances, "it will not suffice to show that the two matters upon which an attorney represents existing clients are unrelated." *Id*. (quoting *GSI Com. Sols., Inc. v. BabyCenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010). Rather, "it is incumbent upon the attorney to 'show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *Id*. (quoting *GSI Com.*, 618 F.3d at 209). The Second Circuit regards the burden of proof imposed on the challenged attorneys as "a burden so heavy that it will rarely be met." *Id*. Indeed, Schulte can never meet that burden here.

In the case of successive representation, an attorney may be disqualified if: (1) "the moving party is a former client of the adverse party's counsel"; (2) "there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues

in the present lawsuit"; and (3) "the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead*, 409 F.3d at 133. "A substantial relationship exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Cypress Holdings*, 2022 WL 4239937, at *3 (quotations omitted).

"An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead*, 409 F.3d at 133; *accord. Anderson v. City of New York*, 2017 WL 4382163, at * 3 (S.D.N.Y. Sept. 29, 2017); *see also* NY Rule 1.10(a); ABA Rule 1.10(a). Although that presumption may be rebutted by a showing that the firm imposed a screen "that prevents the sharing of confidential information," any such screen must be created "at the outset" of the second representation. *Anderson*, 2017 WL 4382163, at *4. By its own admission, Schulte failed to do so here.

## IV. <u>ARGUMENT</u>

### A. <u>Schulte's Concurrent Representation of the RTW Clients and Plaintiff Presents an Inescapable Conflict of Interest that Demands Disqualification</u>

#### 1. The Representation is Prima Facie Improper

Schulte's concurrent representation of the RTW Clients and Plaintiff is *prima facie* improper and warrants the firm's immediate disqualification as counsel for Plaintiff in this Action. *Hempstead*, 409 F.3d at 133 (it is "*prima facie* improper" for an attorney to "simultaneously represent a client and another party with interests directly adverse to that client"); *see also* NY Rule 1.9(a); ABA Rule 1.9(a).

The RTW Clients retained Schulte "in connection with general investment advice, securities law and related matters[.]" (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 1.) During

this ongoing representation Schulte advised the RTW Clients regarding [redacted] (Lee Decl. ¶ 5; Ex. M, Schulte Invoices.) Schulte additionally advised as to generalized securities and regulatory issues, including whether regulatory agencies require parity between a shareholder's economic exposure and their voting power. "A lawyer's duty to his client is that of a fiduciary or trustee." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976). Thus, when the RTW Clients retained Schulte, they were entitled to its "undivided loyalty as its advocate and champion" and to expect that Schulte would not act "adverse to [the RTW Clients'] interests." *Id.*; *see also Murex*, 259 F. Supp. 3d at 57 (a client is "entitled to the[ir] lawyer's undivided allegiance and faithful, devoted service") (internal citations omitted). In fact, Schulte explicitly represented it would not do so.

And yet, on October 25, 2024, Schulte filed this Politan-Masimo Action on behalf of Plaintiff that is "directly adverse" to its pre-existing clients' interests, alleging that the RTW Parties [redacted] (*See* Compl. ¶¶ 91-96 and 101-105.)

When such a concurrent representation is found, "it will not suffice to show that the two matters upon which an attorney represents existing clients are unrelated" in order to avoid disqualification. *Murex*, 259 F. Supp. 3d at 57 (quoting *GSI Com.*, 618 F.3d at 209).[3] Regardless,

[3] Indeed, the Second Circuit has repeatedly observed that "[t]he lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed." *GSI Com.*, 618 F.3d at 210 (citing *Cinema 5,* 528 F.2d at 1386).

it is indisputable that Schulte represents Plaintiff in this action on the *same subject matter for which it has represented the RTW Clients*. Point in fact, just months after Schulte [redacted] (*Compare* Compl. ¶ 11 *with* Lee Decl. ¶¶ 6-8; Ex. O, July 3, 2024 [redacted] Email with Press Release.)

Based solely on the face of the Complaint, there can be no dispute that Plaintiff's interests in this action are "directly adverse" to those of the RTW Clients, rendering Schulte's concurrent representation *prima facie* improper. Consequently, Schulte may only maintain its concurrent and conflicted representation of Plaintiff by proving that "there will be no *actual* or *apparent* conflict in loyalties or diminution in the vigor of [its] representation" of RTW. *Murex*, 259 F. Supp. 3d at 57 (citing *Hempstead*, 409 F.3d at 133). This standard—described by the Second Circuit as "a burden so heavy that it will rarely be met"—certainly cannot be satisfied by Schulte here. *Id.* (quoting *GSI Com.*, 618 F.3d at 209). Schulte is alleging RTW Clients acted illegally. There is no greater actual *and* apparent conflict in loyalties.

**2. Schulte's Representation of Plaintiff Is Incompatible with Its Duty of Loyalty to The RTW Clients**

Schulte announced its conflicted loyalties loud and clear by filing a Complaint against its own clients that includes gratuitous allegations that serve only to sully the RTW Parties' reputation and attack their integrity. At minimum, Schulte's repeated characterizations of the RTW Parties as "deceit[ful]" and "manipulative" creates the "appearance of the law firm's disloyalty—if not a degree of hostility—towards" its own clients. *Murex*, 259 F. Supp. 3d at 70 (firm's inclusion of

"extraneous allegations" about former client were "difficult to view . . . as other than a gratuitous swipe").

Schulte's allegations regarding [redacted] are even more egregious because they are irrelevant to Count I or Count II of the Complaint. As evidenced by Adriana Schwartz's July 3, 2024 email to Alice Lee, [redacted] (Lee Decl. ¶ 8; Ex. O, July 3, 2024 [redacted] Email with Press Release.) Schulte's "willingness to blacken [the RTW Parties'] eye" by including these unnecessary allegations solely for Plaintiff's benefit demonstrates its clear conflict in loyalties and answers the question of whether the RTW Clients can be confident that Schulte will honor its duty of loyalty to them with a resounding "no." *See Murex*, 259 F. Supp. 3d at 70 (disqualification necessary where continued representation "would give the appearance of absolving [the firm] for its seemingly casual disregard of a . . . client's reputational and legal interests").

Schulte's compromised loyalty to the RTW Clients is further reflected by its refusal to comply with the RTW Parties' 220 Demand, the purpose of which was to investigate the corporate mismanagement, waste, and wrongdoing that led to Plaintiff's filing of this action. (Michelman Decl. ¶ 6 Ex. T, Schulte's December 4, 2024 220 Demand Response.) Schulte's refusal to comply with Delaware law and provide these potentially exculpatory materials *to its own clients* is a far cry from its duty to act as the RTW Clients' "advocate and champion" or to provide them its "undivided allegiance and faithful, devoted service." *Cinema 5*, 528 F.2d at 1386; *Murex*, 259 F. Supp. 3d at 57.

All of this evinces Schulte's blatant disregard for its fiduciary duty of loyalty to its clients, the RTW Clients. Together with Schulte's *prima facie* improper concurrent representation of Plaintiff, these "actual and apparent" disloyalties demand Schulte's immediate disqualification.

**3. Schulte's Concurrent Representation of Plaintiff Presents a Real Risk of Trial Taint**

Disqualification is further warranted due to the risk that Schulte's access to the RTW Clients' confidential information could, and possibly already has been, used to the RTW Parties' detriment. *See Murex*, 259 F. Supp. 3d 38, 74 (disqualification was "required to avoid the risk that counsel's access to [client's] confidential information would, even if inadvertently or unconsciously, affect counsel's conduct of this litigation").

By virtue of its years' long representation of the RTW Clients regarding "securities laws and related matters," Schulte possesses significant confidential information regarding its clients' compliance practices and regulatory obligations. Such circumstances create a "real risk" that any trial in this action will be tainted if Schulte is permitted to continue its representation of Plaintiff. *See Murex*, 259 F. Supp. 3d at 72 (observing risk of trial taint if firm personnel privy to client's materials or government filings were to represent client's litigation adversary). For example, Schulte "might be better able to foresee, preempt, and/or combat" the RTW Parties' defenses to Plaintiff's claims, including their "compliance history and systems," and may have insight regarding central witnesses. *Id*.

Moreover, Schulte's concurrent representations will create an ethical nightmare rife with grounds for appeal when it comes to deposition or trial testimony. The RTW Clients will be forced to testify that opposing counsel—*their counsel*—advised them that [redacted] Setting aside the unavoidable jury confusion,

this very likely eventuality will damage *both* Plaintiff and the RTW Clients. Indeed, there is no scenario in which Schulte's continued involvement in this case will not prejudice both sides.

As this Court has previously held, "the interest in assuring the integrity of this litigation must be paramount." *Murex*, 259 F. Supp. 3d at 74. Given the actual and apparent conflict in Schulte's concurrent representation of Plaintiff and the RTW Clients, this Court's immediate disqualification of Schulte is both warranted and necessary.

#### 4. Even Successive Representations of the RTW Clients and Plaintiff Demands Schulte's Disqualification

To the degree Schulte's conflicted representations can be considered successive, rather than concurrent, disqualification is nevertheless warranted because Schulte's representation of the RTW Clients is substantially related to Plaintiff's allegations against the RTW Parties, and Schulte's attorneys have long had access to the RTW Clients' relevant privileged information. *See Cypress Holdings*, 2022 WL 4239937, at *3 (summarizing factors warranting disqualification for successive representation); *see also* NY Rule 1.9(a) (similar); ABA Rule 1.9(a).

#### 5. Plaintiff's Allegations Against the RTW Parties Are Substantially Related to Schulte's Representation of The RTW Clients

It is undeniable that Schulte advised the RTW Clients on matters "substantially related" to Plaintiff's claims against the RTW Parties in this action, as Plaintiff's claims against the RTW Parties are premised on precisely the same facts underlying Schulte's regulatory counsel to the RTW Clients. *Cypress Holdings*, 2022 WL 4239937, at *3 (defining "substantial relationship"); *see also Anderson v. City of New York*, 2017 WL 4382163, at *4 (S.D.N.Y. Sept. 29, 2017) ("the substantial relationship inquiry turns on the nexus between the factual issues, not the legal issues, in the successive representations").

From June through August 2024 Schulte regularly advised the RTW Clients [redacted] among other things. (Lee Decl. ¶¶ 4-5; Ex. M, Schulte Invoices.) The facts surrounding each of these subjects are undeniably relevant to Plaintiff's allegations against the RTW Parties, which implicate the RTW Clients' [redacted] (*See, e.g.,* Compl. ¶¶ 79, 80, 82.) Furthermore, Alice Lee and Adriana Schwartz specifically communicated about [redacted] in July 2024. (Lee Decl. ¶¶ 6-8; Ex. N, Lee Phone Records; Ex. O, July 3, 2024 [redacted] Email with Press Release.) The Complaint alleges that the RTW Parties [redacted]

Therefore, as evidenced by its own invoices and emails, the counsel Schulte provided to the RTW Clients goes to the heart of Plaintiff's allegations, mandating Schulte's disqualification. *See Anderson*, 2017 WL 4382163, at *3 (firm was disqualified from representing plaintiff where factual issues from firm's prior representation of defendant were "at the heart" of plaintiff's claims).

**6. Schulte's Litigation Team Had Access to the RTW Clients' Relevant Privileged and Confidential Information for Months**

Because Schulte's representations of the RTW Clients and Plaintiff are substantially related, "there is a rebuttable presumption that counsel had access to confidential information during the first [representation] that would be relevant in the second." *Anderson*, 2017 WL 4382163, at *4; *see also Cypress Holdings*, 2022 WL 4239937, at *3 ("[O]nce the movants prove

a 'substantial relationship,' they do not also bear the burden to 'identify confidences [movants] had shared with [their] counsel.") (quoting *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016)). Parties such as the RTW Clients enjoy this presumption because otherwise they would face "the Hobson's choice of either having to disclose [their] privileged information in order to disqualify [their] former attorney or having to refrain from the disqualification motion altogether." *In re WB Bridge Hotel LLC*, 656 B.R. 733, 754 (Bankr. S.D.N.Y. 2024). Instead, courts within the Second Circuit "assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." *Cypress Holdings*, 2022 WL 4239937, at *3.

Such an assumption is more than warranted here, where the evidence shows that, at the very least, Randall Adams was directly involved in providing legal advice to the RTW Clients as recently as June 2024. (Lee Decl. ¶ 5; Ex. M, Schulte Invoices.) Randall Adams' inside knowledge regarding the RTW Clients' [redacted] means Plaintiff's counsel in this action has the potential advantage of "knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue . . . and innumerable other uses." *Cypress Holdings*, 2022 WL 4239937, at *4 (internal quotations omitted). In the face of such evidence, Schulte simply cannot rebut the Court's presumption that its attorneys representing Plaintiff enjoyed unfettered access to the RTW Clients' relevant privileged and confidential information for months. This alone is sufficient grounds for Schulte's disqualification.

**B. <u>Disqualification Affects All of Schulte</u>**

Second Circuit precedent leaves no doubt that all of Schulte, not just the attorneys who directly advised the RTW Clients, are precluded from representing Plaintiff in this action. "[A]n

attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005), 409 F.3d at 133; *see also Anderson*, 2017 WL 4382163, at *3 (attorney's conflict was "imputed to the entire firm"); *and see* NY Rule 1.10(a) (similar); ABA Rule 1.10(a) (similar). The distinction between Schulte's regulatory and litigation practices does not preclude this outcome, as district courts within the Second Circuit regularly disqualify entire firms on the grounds of such imputed conflicts. *See, e.g.*, *Murex,* 259 F. Supp. 3d at 40, 74 (entire firm disqualified because while its "litigators in Atlanta were readying to sue [defendant] . . . its separate Washington, D.C., office was separately representing [defendant] in regulatory work"); *Cinema 5, Ltd. v. Cinerama, Inc*., 528 F.2d 1384, 1387, n.1 (2d Cir. 1976) (entire firm disqualified even though prior representation occurred while conflicted partner was at a different firm and partner "would make every effort to dissociate himself from both lawsuits").

Schulte cannot salvage its representation of Plaintiff by hiding behind an untimely ethical wall, either. Such a screen must have been imposed "***at the outset*** of the second litigation [to] prevent[] the sharing of confidential information." *Anderson*, 2017 WL 4382163, at *4 (citing *Hempstead*, 409 F.3d at 133) (emphasis added). Here, Schulte waited ***eight weeks*** after it definitively knew of a conflict to create an ethical wall—by which time at least Randall Adams was already privy to the RTW Clients' relevant confidential information. (Lee Decl. ¶¶ 5, 7, 14; Ex. 2, Schulte's November 15, 2024 Refusal to Withdraw, at 2-3, 7; Ex. M, Schulte Invoices.) It is simply insufficient to impose an ethical wall *after* an attorney is compromised by conflicted representations. *See United States v. Morris*, 2018 WL 2088301, at *1 (S.D.N.Y. May 4, 2018) (factors in the analysis of an ethical wall's sufficiency "include the timing of any screening

mechanisms"); *Murex*, 259 F. Supp. 3d at 73 (wall erected after lawyers were exposed to confidential communications was insufficient to rebut presumption of shared confidences).

### C. Schulte's Purported Advance Conflicts Waiver Does Not Preclude Disqualification

Schulte's inclusion of an "Advance Waiver of *Certain* Conflicts of Interest" in the RTW Engagement Letter does not change the foregoing analysis at all. Basic rules of contract interpretation, federal common law, the NY Rules, and the ABA Rules all dictate that the purported advanced waiver does not preclude Schulte's disqualification from this action. *See Ameriway Corp. v. Chen*, 2024 WL 4362731, at *6 (S.D.N.Y. Oct. 1, 2024) ("Attorneys appearing before a federal court in New York must abide by the New York State Rules of Professional Conduct").

#### 1. The Advance Waiver Expressly Carves Out Circumstances Such as Those Presented Here

The RTW Engagement Letter's alleged "advance waiver" only permits concurrent representations "so long as the Firm is not then engaged by [the RTW Clients] ***in the matter*** in which the Firm would be representing the other clients ***in a manner*** that would be ***directly adverse*** to [the RTW Clients]." (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 4 (emphasis added).) The subject matter of Schulte's representation of the RTW Clients broadly covers "securities law and related matters," including the RTW Clients' [redacted] (Lee Decl. ¶¶ 4-8; Ex. M, Schulte Invoices; Ex. N, Lee Phone Records; Ex. O, July 3, 2024 [redacted] Email with Press Release.) As already discussed in great detail, Plaintiff's allegations against the RTW Clients are premised on the precise same subject matter. Thus, the advance waiver does not apply to Schulte's representation of Plaintiff.

### 2. The Advance Waiver Is Invalid Because the RTW Clients Lacked Informed Consent

The advance waiver is additionally invalid because it did not sufficiently alert the RTW Clients to the risk that Schulte might, on behalf of another client, sue the RTW Clients by claiming that their adherence to Schulte's own counsel was improper and violated federal law. In the event Schulte claims in opposition that the language of the RTW Engagement Letter is clear, this motion belies that proposition.

A valid advance waiver requires informed consent, *i.e.*, "'that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client.'" *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 311 (E.D.N.Y. 2010); *see also* NY Rule 1.7, Cmt. 18 (same). Accordingly, the validity of a client's anticipatory waiver "is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails." *Filippi*, 722 F. Supp. 2d at 311 (citing NY Rule 1.7, Cmt. 22).

Here, there is no way the terms of the advance waiver alerted the RTW Clients to "the material and reasonably foreseeable ways that the conflict could adversely affect" their interests to satisfy the requirements for informed consent. *Id.* The RTW Clients signed the RTW Engagement Letter in November 2021, months before Politan began buying up Masimo stock with the long-term goal of gaining control of the Masimo Board. (*See* CD Cal Action, ECF No. 132, Amended Complaint ¶¶ 63-65 (stating Politan's plans started in February 2022).) As observed by this Court, "[f]uture directly adverse litigation against one's present client is a matter of such an entirely different quality and exponentially greater magnitude" that any advance waiver of such conflict "must identify that possibility, ***if not in plain language, at least by irresistible inference***

***including reference to specific parties***, the circumstances under which such adverse representation would be undertaken, ***and all relevant like information***." *Murex*, 259 F. Supp. 3d at 65 n.18 (emphasis added). The RTW Engagement Letter lacked anything of the sort.

To the contrary, the RTW Clients could not have "understood the possible implications" of the conflict Schulte now claims they waived because that conflict was unknown and unforeseeable at the time they signed the RTW Engagement Letter. *See Filippi*, 722 F. Supp. 2d at 311. Moreover, it is unrealistic that RTW Clients would imagine the very same Schulte lawyers would be Plaintiff's counsel, seeking subpoenas, suing the RTW Clients, and aggressively attacking them at every possible moment. This Court has previously expressed its skepticism that a party "could have given 'informed consent' to waive a future conflict that—at the time the parties signed the Engagement Letter—was purely hypothetical," and where the waiver in question "does not disclose the details of the specific conflict at issue." *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 2020 WL 209903, at *5 (S.D.N.Y. Jan. 14, 2020); *see also Murex*, 259 F. Supp. 3d at 65 (advance waiver provision that "did not identify the [plaintiff's] matter as one in which the firm sought to reserve the right to be adverse to [defendant]" "fell well short of embodying informed client consent"). As in these cases, the advance waiver did not identify Plaintiff or Politan as a potential client, nor did it describe their claims against the RTW Parties or otherwise disclose the nature of the conflict.

Nor did the advance waiver caution the RTW Clients more generally that it would permit Schulte to represent a client acting directly adverse to the RTW Clients' interests ***on subject matter on which Schulte was retained to advise the RTW Clients***. *See, e.g.,* NY Rule 1.7, Cmt. 22 ("At a minimum, the client should be advised generally of the types of possible future adverse representations that the lawyer envisions, as well as the types of clients and matters that may

present such conflicts."). The examples cited in the RTW Engagement Letter each contemplate situations in which Schulte may represent another party with interests that compete with those of the RTW Clients. (Lee Decl. ¶ 4; Ex. L, RTW Engagement Letter, at 3.) ***But none of the scenarios*** provides notice that the advance waiver would permit Schulte to take up a representation of another client that would allow Schulte to sue the RTW Clients about advice Schulte provided, or that would otherwise render Schulte's fiduciary duties to the RTW Clients obsolete. The reason the RTW Engagement Letter does not even attempt to permit this is obvious: any such concession and advance waiver would be absurd, invalid *per se,* and wholly defeat the purpose of the attorney client relationship.

In sum, the RTW Engagement Letter's advance waiver is invalid because it did not and could not sufficiently inform the RTW Clients of the risks involved, and thus the RTW Clients lacked the informed consent necessary for a valid waiver.[4]

## V. CONCLUSION

The RTW Parties respectfully request the Court immediately disqualify Schulte from representing Plaintiff in this action, and that the Court grant such other and further relief as the Court deems just and proper.

Dated: December 23, 2024

Respectfully submitted,

**MICHELMAN & ROBINSON LLP**

By: /s/ Sanford L. Michelman
Sanford L. Michelman, *admitted pro hac vice*
Warren Koshofer
Molly Wolfe
605 Third Avenue 30th Floor
New York, NY 10158

[4] Moreover, a client may revoke its waiver of a conflict of interests at any time. *See Filippi*, 722 F. Supp. 2d at 311; *see also* Rule 1.7, Cmt. 21 ("A client who has given consent to a conflict may revoke the consent"). In light of the instant motion to disqualify, the RTW Clients have clearly revoked any purported consent to Schulte's representation of Plaintiff.

Tel.: 212-730-7400
Smichelman@mrllp.com
wkoshofer@mrllp.com
mwolfe@mrllp.com

Mona Z. Hanna, *admitted pro hac vice*
Todd Stitt, *admitted pro hac vice*
Telephone (714) 557-7990
17901 Von Karman Ave, 10th Floor
Irvine, CA 92614
mhanna@mrllp.com
tstitt@mrllp.com

*Attorneys for Defendants Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC*