UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, ) CERTIFIED TRANSCRIPT
)
Plaintiff, )
vs. )
) SACV-25-03188-JVS
JOE E. KIANI, et al., )
Defendants. )
----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 12, 2025

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(612) 804-8655

APPEARANCES OF COUNSEL:

For the Plaintiff:

MICHAEL E. SWARTZ
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000

ROBERT MATTHEW GARSSON
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

For the Defendants:

MONA Z. HANNA
MICHELMAN ROBINSON, LLP
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
(714) 557-7990

MARY FIONA WOLFE
MICHELMAN ROBINSON, LLP
605 Third Avenue, 30th Floor
New York, NY 10158
(212) 730-7700

SANTA ANA, CALIFORNIA; MONDAY, AUGUST 11, 2025; 1:46 P.M.

THE CLERK: Calling Item No. 4, SACV-25-03188-JVS, Masimo Corporation versus Joe E. Kiani, et al.

Counsel, please state your appearances.

01:46 MS. HANNA: Good afternoon, Your Honor. Appearing for defendants RTW entities, Mona Hanna and Molly Wolfe.

THE COURT: Good afternoon.

MR. SWARTZ: Good afternoon, Your Honor. Appearing for Masimo Corporation, Michael Swartz and Robert Garsson from Quinn Emanuel.

01:46

THE COURT: Good afternoon.

It's defendants' motion. Would you like to be heard?

MS. WOLFE: Thank you, Your Honor.

01:46 Good afternoon, Your Honor. Molly Wolfe appearing on behalf of the RTW defendants.

Your Honor, thank you for the tentative ruling, which we've received and we've had a chance to review. We'd like to start with a request for a clarification. We note that on pages 14 and 11 of the tentative, the Court appears

01:47 to use language that seems to indicate that it's making a finding of fact as to the existence of a Section 13 group, and we'd like to confirm that even in the event the Court denies the RTW defendants' Motion to Dismiss, it's not making a substantive finding on the merits of plaintiff's

01:47

01:47 claims. It's only making a finding as to the sufficiency of the allegations.

THE COURT: Correct.

MS. WOLFE: Thank you, Your Honor.

01:47 Next, the RTW defendants would like to address the issue of Section 16(b) liability. As the tentative notes on pages 6 and 7, to allege a Section 16(b) claim Masimo, plaintiff, must allege that each defendant was a beneficial owner who purchased and sold Masimo securities within a 01:48 six-month period of time. On page 14, the tentative states that the Amended Complaint "alleges that defendants made purchases and sales within a six-month period between May 24 and September 18, 2024," and the tentative cites the Amended Complaint at paragraphs 107 through 109.

01:48 Respectfully, this is not the case. Those paragraphs refer to "RTW," which is a term that's defined to encompass all 11 individual RTW defendants, which includes nine entities and two individuals. In fact, of the 11 RTW defendants, plaintiff has only alleged that two of them, the 01:48 two Master Funds, have engaged in any trades whatsoever during the relevant period, and it makes those allegations in paragraphs 23 and 26.

But of the remaining nine RTW defendants, only RTW Investments, LP, is alleged to have ever owned any Masimo 01:49 stock whatsoever. And in that allegation in paragraph 21,

01:49 RTW Investments, LP, is only alleged to have owned Masimo stock as of November 2024, which is not only after the six-month window that's in question, but also after the shareholder vote that's at issue in this case. It's not 01:49 alleged to have bought or sold securities at any time.

Accordingly, RTW Investments, LP, must be dismissed under the Section 16(b) claim. And since none of the remaining eight RTW defendants are alleged to have bought or sold any Masimo shares, they also must be 01:49 dismissed from this count.

Importantly, Your Honor, this is true even if the Court does make a finding that the Amended Complaint has sufficiently alleged the existence of a Section 13 group. That's because when it comes to Section 16(b), one entity 01:50 cannot be liable for the trades of another entity in the alleged group unless there's a showing that it can share in the profits of those trades -- or an allegation that it can share in the profits of those trades.

Now, we know that the Motion to Dismiss was 01:50 briefed originally under Second Circuit law and before the case was transferred to this Court, but RTW invites the Court's attention to the Central District of California case law that directly supports this point, that one member of the Section 13 group cannot be liable under Section 16 for 01:50 the trades of other members.

01:50 THE COURT: But district court decisions are not binding on me. They may be instructive, but they're not binding.

MS. WOLFE: Yes, Your Honor, but I think that the 01:50 case is instructive as to how the Court may think about these allegations under Section 16.

THE COURT: Okay.

MS. WOLFE: The case in question is Huppe v. Guez, 2005 WL 8154782 (C.D. Cal. April 18, 2005), and I'm 01:51 specifically talking about asterisks six and seven of the decision.

THE COURT: District court, unpublished.

MS. WOLFE: Yes, Your Honor.

THE COURT: Okay.

01:51 MS. WOLFE: There the Court granted a Motion to Dismiss in part because the Complaint did not specifically allege which members of the Section 13 group can be held accountable for a particular purchase or sale of a particular security. The Court specifically stated that if 01:51 a group member does not have or share a pecuniary interest in securities held by other members of the group, then the transactions of those other members do not create Section 16 obligations for that member that doesn't have a pecuniary interest.

01:51 So under Huppe, none of the non-trading RTW

01:51 defendants can be liable under Section 16(b) unless plaintiff alleges that they had the opportunity to share in the profit of the Master Funds trades. Again, this is regardless of whether or not there's been a finding of a 01:52 Section 13 group.

To Your Honor's point, this concept that you must allege not only the beneficial ownership and the purchases and sale of the securities, but a pecuniary interest in the profits of the trades is not -- the concept that you must 01:52 allege not just beneficial ownership and purchases and sales within a six-month period, but also a pecuniary interest in the profits of those sales, is not unique to this case, Huppe v. Guez. The authorities that plaintiff has cited in its own brief, including the Morales case, agree with that 01:52 understanding of Section 16 liability.

Now, the Amended Complaint contains no such allegations that any of the non-trading RTW entities or individual defendants had any pecuniary interest whatsoever in the trades of the Master Funds. Four of the non-trading 01:53 RTW entities are allegedly feeder funds for the Master Funds, but there's no allegation that being a feeder fund allows them to share in the Master Funds' profits. And those allegations are in paragraphs 24, 25, 27, and 28 of the Amended Complaint.

01:53 RTW Investments, LP, was allegedly an advisor to

the Master Funds, but there's no allegation anywhere in the Amended Complaint that being an advisor would allow it to share in the profits of the Master Funds' trades, and those allegations are in paragraphs 23 and 26 of the Complaint.

Two of the non-trading RTW entities are allegedly general partners of other RTW entities, which did not trade, and which themselves are not alleged to have any shares in the Master Funds' trading profits.

Finally, the individual RTW defendants, Drs. Yalamanchi and Wong, although they are both alleged to have equity in RTW Investments in paragraphs 19 and 20, again, having equity in RTW Investments does not constitute an allegation that they have the ability to share in the profits of the Master Funds, because RTW Investments itself is not alleged to have the ability to profit in the trades of the Master Funds.

In fact, the only time the Amended Complaint references pecuniary interests whatsoever is in paragraph 128. There it says that Dr. Wong, Dr. Yalamanchi, and the two general partner RTW entities have a pecuniary interest in the short-swing profits realized by RTW. But this kind of pleading simply recites the elements of a Section 16(b) liability claim and is patently insufficient. In fact, under the Huppe case, the Court found that similar allegations, that defendants profited from the transactions

01:55 and therefore had a pecuniary interest, were insufficient.

For that reason, we ask the Court to find -- sorry, Your Honor. I'd like to address now in a related note that plaintiff argues that its allegations against RTW 01:55 as a group are sufficient because the RTW defendants are a family of affiliated entities and individuals. It makes that argument in the opposition at page 37. The tentative notes that group pleading may be permissible so long as it's "limited to defendants who are similarly situated," and that 01:55 is true.

Plaintiff would have the Court understand that similarly situated means affiliated entities, such as the RTW entities, but that's not what similarly situated means. It means the defendants must be similarly situated as to 01:56 liability.

The tentative cites two cases that support this point on page 12. The first is the case Bassam versus Bank of America in which plaintiff sued a number of defendants for breach of contract. Defendants argued that the pleading 01:56 was insufficient because plaintiffs did not specifically identify which parties breached the contract. The Court agreed with this and found that the defendants were not similarly situated in terms of their relationship to the agreement, and for that reason, group pleading was not 01:56 permissible.

01:56 In In re American Apparel, which is another case that the tentative cites on page 12, plaintiffs brought a breach of fiduciary claim against various board members, which it referred to as the individual defendants throughout 01:56 the Complaint without identifying who committed which breaches.

The Court found that group pleading was permissible as to most of these defendants because the majority of the board members had held their directorships 01:57 during the entire period of the alleged misconduct, and for that reason, those defendants were similarly situated. But the Court found that group pleading was not permissible as to one defendant, Richardson, because he did not hold his directorship for the entirety of the alleged misconduct. 01:57 The Court found, quote: "He stands in a materially different position than the rest of the board members. This difference may require specific factual allegations concerning his role, responsibilities, conduct and knowledge," and that quote is in In re American Apparel at 01:57 42.

I'd like to discuss one more case also cited in the tentative at page 11, which is also cited by both Bassam and In re American Apparel. This is the case In re Sagent Technology Derivative Litigation. Here again, we have a 01:58 case where plaintiffs sued various board members for

01:58 breaches of fiduciary duty. But here, defendants were both current and former board members. Indeed, only two of the six current board members had been on the board at the time of the unlawful conduct.

01:58 The Court found that the plaintiffs had to distinguish among these different groups of defendants because the directors could not be liable for conduct before they joined the board or for conduct after they left the company. And that is at In re Sagent Technology Derivative 01:58 Litigation at 1093. Again, it's cited in the tentative on page 11.

So the takeaway here from these three cases is that group pleading is permissible when the defendants are similarly situated as to liability, not based on their 01:59 affiliation. The board members are all affiliated. They all work together. They all work for the same company. But they're not all similarly situated if they cannot be held accountable for the same liability.

Now, the tentative states on page 12 that the RTW 01:59 defendants are similarly situated because the allegations against one of the RTW defendants can be imputed to every other RTW defendant. But when it comes to the purchase and sale of Masimo securities within a six-month period, which are necessary elements of a Section 16 claim, this is not 01:59 the case. Therefore, their conduct cannot be imputed to one

01:59 another, and the purchase and sale of those shares must be alleged specifically.

For this reason, we'd request dismissal of all the RTW defendants, including the individual defendants, with

01:59 the exception of RTW Master Fund, Ltd., and RTW Innovation Master Fund, Ltd., for failure to allege all elements of a Section 16 claim. Again, we urge this finding even in the event the Court finds that there are sufficient allegations in the Amended Complaint to raise an inference of the

02:00 existence of a Section 13 group.

And that brings me to my final point. We'd like to turn to the Amended Complaint's allegations as to the existence of the Section 13 group. We note that the tentative states that the Court must take all well-pleaded

02:00 allegations as true and construe them in the light most favorable to the defendant, and it makes this point at pages 6, 11, and 13, each time citing the case Daniels-Hall versus National Education Association at 998.

The tentative says in fact that the Amended

02:00 Complaint alleges sufficient facts that RTW can find logical discrepancies among them and makes that point at 13. But those discrepancies matter because Daniels-Hall also states that the Court is not required to accept as true three buckets of allegations: allegations that contradict matters

02:01 that are properly subject to judicial notice, unwarranted

02:01 deductions of fact, and unreasonable inferences. And again, Daniels-Hall makes that point at 998.

Now, RTW is arguing that a number of plaintiff's allegations are not well-pleaded facts but fall into these 02:01 three buckets, and that's why the Complaint does not sufficiently allege the existence of a Section 13 group. The first of these buckets is allegations that contradict matters which are properly subject to judicial notice.

Plaintiff alleges that Mr. Kiani changed the 02:01 record date on July 15 because Glass Lewis and the Institutional Shareholder Services both recommended against voting for his nominees. That allegation is in the Amended Complaint at paragraph 84. And the tentative agrees that this moving of the record date days after these 02:02 recommendations came out reflects group activity, and it makes that finding at page 10.

THE COURT: Well, again, we continue to need to make the distinction you made at the very beginning. There's one thing to find that the facts pled are 02:02 sufficient, and there's another thing to find the facts are true. The Court clearly isn't doing that on a Motion to Dismiss.

MS. WOLFE: We wholly agree, Your Honor. Thank you.

02:02 The tentative agrees that this allegation raises

02:02 the inference that this would reflect group activity. But judicially noticeable documents showed that the board moved the record date on July 15, days after Politan publicly demanded twice that it do so. The first time Politan did 02:03 this was in a July 3 letter to the Masimo Board, which it subsequently publicly filed in filings with the SEC on July 8. That letter is attached to the Koshofer Declaration as Exhibit B, ECF 120-2.

And the second time Politan did this is in a July 02:03 12 letter to the Board, which it also filed in its SEC filings on July 12, and which is also attached to the Koshofer Declaration as Exhibit E, Docket No. 120-5. And Mr. Kiani called a Board meeting, and the Board moved the record date three days after this second public demand.

02:03 The Amended Complaint also --

THE COURT: So where is the judicial notice? Where's the contradiction? That more than one party may have requested moving the vote date doesn't negate the fact that another party may have as well, including Politan.

02:04 MS. WOLFE: That's correct, Your Honor, which is my next point. The Amended Complaint also concedes in paragraph 9 that in resetting the record date, Kiani "mooted the impact of defendants' empty voting scheme." That's the opposite of acting in the furtherance of his Section 13 02:04 group's interests.

02:04 So even when you're viewing that allegation and these judicially noticeable facts in the light most favorable to plaintiff, it contradicts the allegation that moving the record date was done in furtherance of the Section 13 interests.

THE COURT: I don't see why there can't be two nominal causes in the fact that Politan may have made the same demand. It doesn't negate the allegation that the RTW group requested the same accommodation.

02:05 MS. WOLFE: It's true, Your Honor, that it could be that both Politan requested the record date be moved --

THE COURT: Right.

MS. WOLFE: -- and that Kiani moved the record date because he decided that it would be in the best interests of the group. But I think the key here is that --

THE COURT: Well, isn't that sufficient? Haven't you made the point? I mean, there was a demand made by the RTW group, at least as pled, and the date was moved. I think they're entitled to assert the theory that at least in part RTW caused movement of the date.

MS. WOLFE: Your Honor, part of the plaintiff's argument --

THE COURT: Well, yes or no?

MS. WOLFE: Yes, on those allegations alone --

02:05 THE COURT: Okay.

02:05 MS. WOLFE: -- but I think it's also key to understand that the Amended Complaint concedes that in moving the date, Kiani was mooting the impact of the empty voting scheme. That counters the Complaint's own allegation that moving the date was in furtherance of the scheme. Those are the competing allegations that I'm talking about. And that allegation that Kiani mooted the impact of defendants' empty voting scheme is in the Amended Complaint in paragraph 9.

02:06 THE COURT: Okay.

MS. WOLFE: My next point is to address the unwarranted deductions of fact. Plaintiff alleges in paragraph 52 that RTW's trading activity before the record date, quote, "proves that Kiani told RTW the record date." Respectfully, this does not prove anything. The Court may take an inference that that is the case based on the allegations, but there is no reason to accept this allegation as proof positive that there was a communication.

THE COURT: Don't need proof positive at this point.

MS. WOLFE: You're correct because we're on a Motion to Dismiss.

THE COURT: Right.

MS. WOLFE: But it weakens the strength of that allegation.

02:07 THE COURT: Well, I don't think so. It's a factual allegation that may be subject to attack and disproof on an evidentiary record, but that's not where we are.

02:07 MS. WOLFE: Yes, Your Honor.

My final point is to address the bucket of unwarranted inferences. Now, the Amended Complaint alleges that voting on the same date reflects coordinated activity between RTW and Mr. Kiani. It makes this allegation in 02:07 paragraph 88, and the tentative observes this allegation at page 10. But the Amended Complaint also alleges that Innisfree told Mr. Kiani when RTW voted on the same day that RTW voted. The Amended Complaint makes this allegation in paragraphs 68 and 69. If the Court takes that allegation as 02:07 true, that Innisfree told Kiani when RTW voted, then the inference that RTW and Kiani voted on the same day is unwarranted.

We'd also like to note --

THE COURT: Well, how do you distinguish between 02:08 warranted and unwarranted inferences? I mean, a reasonable inference may be multiple and may be contradictory, but at this stage, as long as it's a reasonable inference drawn from the facts, the Court has to accept it.

MS. WOLFE: But, Your Honor, under Daniels-Hall, 02:08 there are unwarranted and unreasonable inferences.

THE COURT: There may be, but I haven't heard them yet.

MS. WOLFE: The RTW defendants are arguing that this is an unwarranted and unreasonable inference because the Amended Complaint has alleged facts that undercut this inference. That's why it's unreasonable.

THE COURT: Okay. I think I have your point.

MS. WOLFE: Okay. We'd also like to note that the Amended Complaint alleges that for the second vote, RTW and Kiani voted on approximately the same date, which is not the same thing as voting on the same date. It makes that allegation in paragraph 86, which, again, undermines the inference that the plaintiff requests the Court to make.

THE COURT: Well, I think you're asking the Court to infer that they did so in a coordinated fashion, which they can do on the same date or different dates. I think the inference that they're attempting to draw is that there was coordination, whenever it occurred.

MS. WOLFE: That is the inference that --

THE COURT: Well, is that an unreasonable inference?

MS. WOLFE: I do think that that's an unreasonable inference when they're saying because they voted on the same day, it shows coordinated activity, but then they say they only voted approximately the same day. Well, Kiani could

02:09 have voted several days before or a week before under this allegation.

THE COURT: Well, but the point is there was coordination. Whether the coordination occurred by acts by 02:10 each party on the same day, or a day before, or a day after, the inference is coordination.

MS. WOLFE: Yes, Your Honor. We respectfully believe that the allegations undermine this inference that --

02:10 THE COURT: Okay.

MS. WOLFE: I'll move on to our next point, which is --

THE COURT: You've got about five more minutes.

MS. WOLFE: Our next point is the whiteboard 02:10 photo, which Kiani allegedly texted to RTW -- or RTW's Dr. Yalamanchi on June 27th. Here, plaintiff urges that the fact that that text message showed that Kiani knew RTW's increased voting position, and the fact that it showed he also knew BlackRock's decreased voting position -- the fact 02:10 that he possessed that knowledge raises the inference that RTW and Kiani were working together in furtherance of the Section 13 group.

But the Amended Complaint also alleges that Innisfree told Kiani on June 10 that RTW had increased its 02:11 voting position, and Innisfree told Kiani on June 18 that

the shares came from BlackRock. So the information which plaintiff says shows that Kiani and RTW were working together because otherwise it was nonpublic actually was made available to Kiani by a third party. So the fact that the whiteboard photo reflects he had this information does not reflect that he and RTW were working together.

THE COURT: I think this again is an instance of multiple inferences.

MS. WOLFE: The last point, Your Honor, that I'd like to make is to discuss the March 31 press release that Mr. Kiani e-mailed to Mr. Yalamanchi, which the Amended Complaint alleges demonstrates the extent to which Kiani and RTW collaborated as a group, but plaintiff alleges that Kiani and RTW established the group three days later on April 3. So this e-mail, even when construed in the light most favorable to plaintiff, cannot be reflective of group activity because the group didn't exist. Plaintiff alleged that the group didn't exist at that time. All this e-mail reflects is that Mr. Kiani and Mr. Yalamanchi had a close personal and business relationship, and this is the type of e-mail that you would expect from that type of relationship.

Now, the tentative notes at page 11 that there's no single communication or RTW defendant's action that is sufficient to show that they acted as a group. Instead, it says that the totality of the circumstantial evidence gives

02:12 rise to the reasonable inference that a group was formed. The RTW defendants are saying that it's precisely when you look at the totality of the allegations in the Amended Complaint that it's clear many of the Amended Complaint's allegations are contradictory, and undermine these urged inferences, and that in order for the Court to accept some of these allegations as true, it would have to accept that some of these allegations are not true.

THE COURT: Why is that?

02:13 MS. WOLFE: Well, going back to the whiteboard photo, for example, if the Amended Complaint alleges that the information came from Innisfree, then its allegation that the whiteboard photo showing that Kiani had the information is reflective of coordinated activity between him and RTW cannot be true. They're mutually exclusive.

THE COURT: I don't think so. Suppose he knew in advance. He knew from another source. If that information is supplied by the RTW group, it could still sustain an inference that they're working together.

02:14 MS. WOLFE: But there's no allegation that the information was supplied by RTW. There is just an inference being requested to be taken from the fact that he had the information at a certain time. It's for this reason, Your Honor, because of these contradictory allegations, that plaintiffs have failed to adequately plead the existence of

a Section 13 group.

In conclusion, the RTW defendants request that all RTW defendants other than the Master Funds, including the individual defendants, be dismissed because plaintiff has not adequately alleged their liability under Section 16, regardless of the existence of a Section 13 group -- or regardless of whether or not the plaintiff has adequately alleged a Section 13 group.

Second, we request the Court to reconsider its finding that plaintiff has sufficiently alleged that RTW and Kiani formed a Section 13 group.

Finally, we appreciate the Court's confirmation that even in the event it denies the RTW defendants' Motion to Dismiss that it's not making any findings on the merits.

THE COURT: Thank you.

Mr. Swartz.

MR. SWARTZ: Thank you, Your Honor. I'll try to be brief, but if Your Honor would like me to follow up on anything, please let me know.

I agree with everything. Of course I agree with the Court's tentative, and I agree with the Court's commentary about these are inferences that are reasonable, and that's where we're at at the Motion to Dismiss stage.

I want to start with some of the assertions that were really sort of missing the point. This is a Section

02:15 16(b) claim. And to establish our Section 16(b) claim, we need to show that Kiani and RTW are in a group, and that means that they had an agreement, understanding, or arrangement with regard to the acquisition, voting, holding, or disposition of the shares.

02:15 So there was discussions about moving the meeting date, for example. That's not part of our allegation. It's evidence. When they said that there were two different episodes of buying and selling short, and then buying and selling short, there was discussion with counsel about, 02:16 well, if there's an allegation that the scheme was mooted at the time of the movement of the meeting, that has nothing to do with buying or selling the shares. They had a second time where they bought and sold.

02:16 So there's a little bit of misdirection going on. The tentative, I think, very clearly walked through what the actual allegations are, and we got a little off point on these discussions.

With respect to --

02:16 THE COURT: How do we get to a monetary interest in the trading --

MR. SWARTZ: Sure.

THE COURT: -- beyond the two who they concede had a monetary interest?

02:16 MR. SWARTZ: Well, there are multiple issues here.

02:16 This is a doctrine replete in Section 16(b) land. RTW files one Section 13(f) with the SEC, and they list all the entities together. We can't distinguish at this stage which particular fund may or may not have traded because they
02:17 filed a common SEC filing. So if they had --

THE COURT: Well, presumably they wouldn't have filed it if those parties didn't have some interest.

MR. SWARTZ: Correct, and they filed collectively. All the entities that we listed are all listed in their
02:17 Securities and Exchange filing listing that reports the holdings in Masimo stock, so our inference is that all of them hold some pecuniary interest in Masimo. Now, if they showed us trading records and that turned out not to be the case in discovery, that would be different.

02:17 THE COURT: Well, that's not where we are.

MR. HO: No, that's not where we are. And that's the same sort of thing with respect to buying and selling. At this stage, we just need to show there was buying and selling within six months. The Complaint is replete with
02:17 those allegations about going from 2.8 percent to 9.9 percent at the record date, and then having those shares at the record date, and then selling them down when they did a second time. That's the empty voting scheme because they were buying, and when they bought, they shorted, so they had
02:18 no economic interest.

02:18 We walked through in detail -- and the tentative did an excellent job of capturing it -- the back and forth between Kiani and the RTW group in terms of the multiple communications that they had. There was that draft press 02:18 release with regard to the Politan nomination. Whether it was at the time of the group, we don't know. Discovery will show if they had already formed a group at that point in time, but at least it shows that this is beyond just two friends speaking.

02:18 Part of their argument was, well, Kiani and RTW may have had a relationship, but what's the more there? Well, the more is that not only were they friendly, but Kiani was sending a draft press release taking extensive comments from RTW. There's multiple phones calls that we 02:19 have going back and forth, text messages. There's WhatsApp and Signal messages that we no longer have, but we know that they were communicating that way as well. There is the whiteboard that we talked about.

So these cases that go to court because there's no 02:19 actual agreement, there's no -- sometimes you might have a written agreement to be a group. Many times it's inferred. The cases that are litigated are all inferred, and the inferences here are incredibly strong, and Your Honor walked through them in the opinion.

02:19 So with respect to the group issue, going back to

02:19 the pecuniary interest, we allege it. We allege at paragraph 139. That was pointed out by counsel.

THE COURT: If one of the RTW entities didn't have a pecuniary interest, would there be any reason for that particular RTW entity to make a Rule 13(d) filing? 02:19

MR. SWARTZ: Well, if they filed -- they filed under 13(f) to be clear where everybody is aggregated.

THE COURT: Right.

MR. SWARTZ: If they filed under 13(d), as we allege, we would have seen which specific fund filing may or may not have traded. So because they didn't file under 13(d) as we allege they should have, we're prevented from going underneath the hood and figuring out which specific trades they placed. But they all collectively filed, so the inference is that they all had a pecuniary interest as Your Honor noted. 02:20 02:20

Look, if -- when we get into discovery, if it turns out that a particular fund had no pecuniary interest, we'll address it then, but based on the publicly available SEC filings, the inference is that every one of those RTW funds had a pecuniary interest and traded in the stock. Likewise, Mr. Yalamanchi and Mr. Wong had a pecuniary interest because they received incentive fees that get charged. There's case law on the incentive fees that are charged by hedge funds. Those are profits that they would 02:20 02:20

02:21 make from the short-swing trading.

So I think that there is substantial case law, and we can, you know, particularly with respect to -- this happens all the time. When you can't tell me specifically 02:21 on what day you bought or sold, it's because they haven't disclosed it yet. But all we need at this point is a reasonable inference based on what happened.

Here, we have 13(f) filings. We have them talking to Glass Lewis and ISS boasting about how they'd gone up 02:21 from 2.8 percent to 9.9 percent. So there's more than a reasonable basis to infer a group here at the pleading stage for sure. I would submit I haven't seen a stronger case than this at the pleading stage, and I do a lot of these cases.

02:21 If Your Honor doesn't have any other questions --

THE COURT: No. Thank you.

Would you like to be heard briefly in rebuttal?

If a party didn't have a pecuniary interest, would there be any need for that party to make either a 13(d) or a 02:22 13(f) filing?

MS. WOLFE: If the party doesn't have a pecuniary interest for Section 16 purposes, under Section 13(d), if it's part of a group but it still crests the threshold for that group, it would still need to make a 13(d) filing. 02:22 But --

02:22 THE COURT: I asked you a slightly different question. Your position is a number of these RTW entities and individuals did not have a pecuniary interest. Therefore, there's no 16(d) claim. Is there any need for a party to file either a 13(d) or a 13(f) filing if that party does not have a pecuniary interest?

MS. WOLFE: I think the issues are disconnected, Your Honor. Whether or not --

THE COURT: Yes or no? I mean --

02:22 MS. WOLFE: Yes, but filing a 13(d) does not mean you have a pecuniary interest. They're separate issues.

THE COURT: But wait a minute. I want to make sure what you said yes to. I thought you said yes to the proposition.

02:23 MS. WOLFE: If a party has -- take the Master Funds, for example. If they were alleged to have more than ten percent of shares in Masimo, they would both have a pecuniary interest and an obligation to disclose under 13(d). There are other RTW entities who are alleged to be part of the 13(d) group and have to disclose they're part of that group under 13(d) but who are not alleged to have pecuniary interests. So they don't have any Section 16 liability regardless of being part of the group, because being part of Section 13 subjects you to Section 16 if you have more than ten percent shared beneficial ownership.

02:24 Section 13 only goes to shared beneficial ownership among the members of the group. This is a different thing.

If you look at the Morales case, it notes that beneficial ownership is a two-tiered analysis. This is a 02:24 case that plaintiff cites. It states that under the beneficial ownership analysis for Section 13 purposes, the question is do you have voting power or investment power? That's how you get to whether or not you're a part of that Section 13 group. But for Section 16 purposes, the question 02:24 is do you have pecuniary interest in the trades? And that's how you get to liability.

That's the distinction here between the members of the alleged 13 group who may have Section 16 liability and the members of the Section 13 group who cannot have any 02:24 liability, because nowhere in the Complaint are they alleged to have a pecuniary interest in those trades.

THE COURT: Are you saying it's insufficient to allege that an entity or individual who is part of a 13(d) or 13(f) filing -- that that's insufficient to provide at 02:25 least a threshold showing of pecuniary interest for Rule 16?

MS. WOLFE: Yes.

THE COURT: Okay.

MS. WOLFE: I'd also like to respond, Your Honor, to plaintiff's counsel's claims. Again, the question of 02:25 whether a party is part of a Section 13 group is very

02:25 different than whether a party has liability under Section 16. Respectfully, there are no allegations in the Complaint whatsoever, except in paragraph 128, as to any RTW defendant's pecuniary interests. Paragraph 128 only talks about four of the 11 RTW defendants. It talks about Drs. Yalamanchi and Wong, and it talks about the two RTW general partners. And it only does so by conclusorily alleging that they have a pecuniary interest.

This notion that there are incentive fees that plaintiff's counsel mentioned is nowhere in the pleading. There's no -- there's nothing in the pleading about how trading in stock would give your general partner or your advisor any type of pecuniary interest in your own trades.

I'd just like to make sure I didn't miss anything else.

(Pause in proceedings)

MS. WOLFE: Oh, also, plaintiff's counsel referenced that all of the RTW entities filed a 13(f) together. That allegation is also nowhere in the Amended Complaint. They raised it in their opposition to our motion, but they raised that neither in the original Complaint nor in the Amended Complaint, so that's not properly considered.

Thank you, Your Honor.

MR. SWARTZ: I just -- if I might clarify a couple

02:27 of things. I just don't want --

THE COURT: No, no, they're the moving party. They get the last word. Thank you.

The matter will stand submitted.

02:27 (Whereupon, the proceedings were concluded.)

* * *

02:27

02:27

02:27

02:27

02:27

**CERTIFICATE**

02:27

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

02:27

Date: August 12, 2025

02:27

/s/ Sharon A. Seffens 8/12/25

SHARON A. SEFFENS, U.S. COURT REPORTER