SANFORD L. MICHELMAN, ESQ. (SBN 179702)
smichelman@mrllp.com
MONA Z. HANNA, ESQ. (SBN 131439)
mhanna@mrllp.com
WARREN A. KOSHOFER, ESQ. (SBN 213350)
wkoshofer@mrllp.com
MOLLY F. WOLFE, ESQ. (*admitted pro hac vice*)
mwolfe@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
Telephone: (714) 557-7990
Facsimile: (714) 557-7991

Attorneys for Defendants,
RODERICK WONG, NAVEEN YALAMANCHI, RTW INVESTMENTS, LP, RTW INVESTMENTS GP, LLC, RTW MASTER FUND, LTD., RTW OFFSHORE FUND ONE, LTD., RTW ONSHORE FUND ONE, LP, RTW INNOVATION MASTER FUND, LTD., RTW INNOVATION OFFSHORE FUND, LTD., RTW INNOVATION ONSHORE FUND, LP, AND RTW FUND GROUP GP, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

MASIMO CORPORATION,

Plaintiff,

vs.

JOE E. KIANI, RODERICK WONG, NAVEEN YALAMANCHI, RTW INVESTMENTS, LP, RTW INVESTMENTS GP, LLC, RTW MASTER FUND, LTD., RTW OFFSHORE FUND ONE, LTD., RTW ONSHORE FUND ONE, LP, RTW INNOVATION MASTER FUND, LTD., RTW INNOVATION OFFSHORE FUND, LTD., RTW INNOVATION ONSHORE FUND, LP, and RTW FUND GROUP GP, LLC,

Defendants.

Case No.: 2:25-cv-03188-JVS-JDE
Hon. James V. Selna

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**RTW DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY MICHAEL E. SWARTZ AND QUINN EMANUEL URQUHART & SULLIVAN LLP**

Hearing Date: September 22, 2025
Time: 1:30 p.m.
Courtroom: 10C

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .......... 1
II. APPLICABLE LAW .......... 2
III. ARGUMENT .......... 4
A. Swartz Cannot Escape Disqualification Under a Concurrent Representation Analysis. .......... 4
1. The Concurrent Representation Is Not Subject to Any Waiver. .......... 5
2. Schulte's Loyalties Were Conflicted. .......... 6
B. The Facts Require Swartz's Disqualification. .......... 8
C. Quinn Cannot Escape Disqualification Either .......... 12
D. Swartz and Quinn Put Plaintiff in this Position. .......... 13
IV. CONCLUSION .......... 15

## TABLE OF AUTHORITY

Page(s)

**Federal Cases**

*Adams v. Aerojet-Gen. Corp.*, *86 Cal. App. 4th 1324 (2001)* ........ 8

*Advanced Messaging Techs., Inc. v. EasyLink Services Intern. Corp.*, 913 F.Supp.2d 900 (C.D. Cal. 2012) ........ 2

*Aguilar v. Costco Wholesale Corp.*, 2024 WL 1600647 (C.D. Cal. Jan. 29, 2024) ........ 5, 9, 12, 14

*Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*, 659 F. Supp. 3d 1061 (N.D. Cal. 2023) ........ 5, 7, 13

*Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) ........ 7

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992) ........ 12

*End of Rd. Tr. v. Terex Corp.*, *2002 WL 242464 (D. Del. Feb. 20, 2002)* ........ 8

*Eolas Tech. Inc. v. Amazon, Inc.*, *2017 WL 3641831 (N.D. Cal. Aug. 24, 2017).* ........ 3

*ESC-Toy Ltd. v. Sony Interactive Ent., LLC.*, *2024 WL 1335079 (N.D. Cal. Mar. 27, 2024)* ........ 7

*First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38 (S.D.N.Y. 2017) ........ 4, 5, 8, 14

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F.Supp.3d 1100 (2015) ........ 6

*Netlist, Inc. v. SK hynix Inc., 2016 WL 8905079 (C.D. Cal. Dec. 5, 2016).* ........ 4, 5, 6, 7, 8, 13

*Orange Cnty. Apartment House Ass'n v. City of Santa Ana*, 2023 WL 4681575 (C.D. Cal. May 16, 2023) ........ 7

*Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199 (N.D. Cal. 2022) .......... 12

*Spagnuoli v. Louie's Seafood Rest., LLC*, *20 F. Supp. 3d 348, 351 (E.D.N.Y. 2014)* .......... 7

*State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080 (C.D. Cal. 2016) .......... 14

*State Comp. Ins. Fund v. Drobot*, 2014 WL 12579808 (C.D. Cal. July 11, 2014) .......... 12

*Steines v. Crown Media United States, LLC*, 2019 WL 13244574 (C.D. Cal. Jan. 16, 2019) .......... 4, 8, 9

*Van Dusen v. Barrack*, *376 U.S. 612 (1964)* .......... 3

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074 (C.D. Cal.2015) .......... 8

**California Cases**

*Kirk v. First Am. Title Ins. Co.*, 108 Cal. Rptr. 3d 620 (Cal. Ct. App. 2010), *as modified* (May 6, 2010) .......... 4

*Ochoa v. Fordel, Inc.*, 146 Cal. App. 4th 898 (2007) .......... 9

*Sharp v. Next Entertainment, Inc.*, 163 Cal.App.4th 410 (2008) .......... 6

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* 6 Cal.5th 59 (2018) .......... 6

*Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485 (2022) .......... 9

**Federal Statutes**

28 United States Code § 1404(a). .......... 3

28 United States Code § 1404(a). .......... 3

California Rule of Professional Conduct

§1.7(a) ........................................................................ 6
§1.9 ........................................................................ 12, 13
§1.10(a) ........................................................................ 7, 12

Pursuant to the Federal Rules of Civil Procedure, the Local Rules for the Central District of California, the California Rules of Professional Conduct ("CA Rules"), and the American Bar Association Model Rules of Professional Conduct ("ABA Rules"), the RTW Defendants[1] hereby submit this brief in response to Plaintiff's opposition brief (ECF 207, filed August 28, 2025 ("Opposition")) and in further support of the RTW Defendants' Motion to Disqualify Swartz and Quinn (ECF No. 187, filed July 14, 2025 ("Motion")).

## I. INTRODUCTION

Plaintiff's Opposition does nothing to change the fact that Michael Swartz ("Swartz") is absolutely conflicted and cannot be allowed to continue representing Plaintiff in this Action, and that his irreconcilable conflict is imputed to, and necessarily requires disqualification of, Quinn as well. Swartz is subject to automatic disqualification due to Schulte's concurrent representation of Plaintiff and the RTW Clients under either New York or California law, and cannot avoid this outcome by hiding behind an ineffectual purported advance waiver nor by denying and disclaiming that he had any personal duties or obligations to the RTW Clients. Worse yet, Swartz openly and willingly exposed himself to the RTW Clients' confidential information while at Schulte—indeed, worked closely with colleagues who possessed such information and even quoted the RTW Clients' sealed confidential materials in Plaintiff's public filings.

When Schulte's absolute conflict became indefensible, Swartz left that firm—but he did not and could not leave the conflict behind. When presented with the opportunity to bring this Action to a new firm, rather than putting ego aside, Swartz doubled down on his mistakes. He again failed to ensure erection of an ethical wall. He again insisted on not only being "lead attorney" in this Action, but in leading the opposition to this Motion as well—intentionally exposing himself and those on his Quinn team to the RTW

---

[1] Defined terms in this brief are attributed the same definitions as in the RTW Defendants' opening Motion (ECF 187, filed July 14, 2025).

Clients' confidential materials. The uncontested facts, CA Rules, ABA Rules, and applicable law leave no doubt: Swartz must be disqualified, and his refusal to step aside when given a second chance to do so has subjected Quinn to vicarious disqualification as well.

## II. <u>APPLICABLE LAW</u>

Plaintiff's nonsensical argument that New York's professional rules and jurisprudence govern this Motion should be dismissed outright.

As a threshold matter, California state law governs the Motion because Swartz and Quinn represent Plaintiff in a forum court situated within the State of California, and the Ninth Circuit "has made clear that a federal court in California must apply California law in a disqualification motion." *Advanced Messaging Techs., Inc. v. EasyLink Services Intern. Corp.*, 913 F.Supp.2d 900, 906 (C.D. Cal. 2012). Here, four of Plaintiff's five Quinn attorneys appearing in this action hold themselves out as California state barred attorneys, with California practices, who entered appearances only *after* the action was transferred to this Court. (*See* ECF 178, 196, 197, 198). The fifth Quinn attorney, Swartz, sought and was granted permission to appear in this Court *pro hac vice* over the RTW Defendants' objection. In so doing, Swartz agreed to be bound by, among other things, the CA Rules and California jurisprudence. The Central District of California requires attorneys appearing before it to comply with "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." Local Rule 83-3.1.2; *accord Advanced Messaging Techs.*, 913 F.Supp.2d at 907. To be clear then, in appearing *pro hac vice* in this Action post-transfer, Swartz "submits to the disciplinary authority of the Central District of California." Local Rule 83-2.1.3.3(c); (ECF 171, 178).

This Court's recent order on the RTW Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss") eliminates any doubt that Ninth Circuit law governs the merits of the parties' motions. (ECF 203, citing Ninth Circuit and C.D. Cal.

substantive law). Since Plaintiff failed to object to the Court's application of the transferee court's substantive law to the Motion to Dismiss, it has waived any argument that New York law applies to substantive issues following the transfer order.

Plaintiff's caselaw is also inapposite, unpersuasive, and ultimately, entirely irrelevant. *Van Dusen v. Barrack* considers whether a § 1404(a) transfer would impermissibly prejudice a plaintiff due to materially different substantive laws of the transferor and transferee states regarding state law claims, where the federal court is sitting in diversity jurisdiction. 376 U.S. 612**,** 615 (1964). The case does not displace the Ninth Circuit's directive that federal courts in California apply state disqualification standards. In fact, the *Van Dusen* court specifically states that it "do[es] not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor, as opposed to the transferee, State." *Id.*, 376 U.S. at 649. Plaintiff's reliance on *Eolas Tech. Inc. v. Amazon, Inc.*, an unpublished and non-controlling case, is likewise unavailing. 2017 WL 3641831 (N.D. Cal. Aug. 24, 2017). The *Eolas* court found that Texas disqualification law applied even after transfer because Latham & Watkins, the firm in question, had a valid expectation when it accepted the representation "that Texas ethical codes would apply to any motion to disqualify." *Id*. at *1. Indeed, the *Eolas* defendants moved for Latham's disqualification while the case was still pending in Texas. *Id*. By contrast, Quinn had prior notice that its representation of Plaintiff, led by Swartz, could be subject to the CA Rules because: (1) RTW's and Kiani's transfer motions had been pending for months before Swartz moved to Quinn; and (2) this Motion was not filed until mid-July 2025, more than three months *after* the transfer of this Action to this Court in early April 2025. *Eolas* is thus wholly unhelpful to Plaintiff.

Regardless, as set forth below, Swartz and Quinn's representation of Plaintiff in this action warrants disqualification under *both* New York and California's disqualification jurisprudence.

## III. ARGUMENT

### A. Swartz Cannot Escape Disqualification Under a Concurrent Representation Analysis.

As Plaintiff concedes, the question of Swartz's disqualification must be assessed as of the time the conflict arose, *i.e.*, while he was still with Schulte. Opp. at 10. There is no debate or confusion that when Swartz began representing Plaintiff and filed the Original and Amended Complaints in this action, suing the RTW Defendants [redacted] on behalf of Plaintiff, Schulte currently represented the RTW Clients on [redacted] The Court's inquiry need go no further, as this directly adverse concurrent representation both: (a) triggers California's automatic disqualification rule; and (b) is *prima facie* improper under New York's disqualification framework. *See, e.g., Steines v. Crown Media United States, LLC*, 2019 WL 13244574, at *5 (C.D. Cal. Jan. 16, 2019) ("Absent informed written consent, a lawyer is automatically disqualified from acting as an advocate in one matter against a person the lawyer represents in the same or another matter, even if the matters are wholly unrelated."); *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 57 (S.D.N.Y. 2017) ("[I]t is '*prima facie* improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client."). To be clear, Swartz was subject to disqualification while at Schulte and is a specific focus of the pending Schulte DQ Motion—which was filed back in December 2024. (ECF 94; ECF 128).

Both Ninth Circuit and Second Circuit district courts observe that the standard for disqualification in simultaneous representations is necessarily stricter because such conflicts "implicate a lawyer's duty of loyalty" as opposed to matters of confidentiality. *Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079, at *3 (C.D. Cal. Dec. 5, 2016); *accord Murex*, 259 F. Supp. 3d at 57. Indeed, the Court's "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Kirk v. First Am. Title Ins. Co.*, 108 Cal. Rptr. 3d 620, 630 (Cal. Ct. App. 2010),

*as modified* (May 6, 2010) (citation omitted); *accord Aguilar v. Costco Wholesale Corp.*, 2024 WL 1600647, at *2 (C.D. Cal. Jan. 29, 2024). California's "stringent *per se* rule of disqualification" involves matters of client trust and an attorney's duty of loyalty, *not* just issues of confidentiality." *Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*, 659 F. Supp. 3d 1061, 1067 (N.D. Cal. 2023); *see also Netlist*, 2016 WL 8905079, at *5 (disqualification is mandatory "not merely to protect against 'specific acts of disloyalty or diminution of the quality of the attorney's representation,' but rather because such conflicts jeopardize the very 'integrity of the attorney-client relationship'") (citation omitted). There is no doubt then that Schulte and Swartz's concurrent representation of Plaintiff in this Action was, and as to Swartz still is, incompatible with their duty of loyalty to the RTW Clients; a duty which is being wholly ignored by Swartz at every turn.

**1. The Concurrent Representation Is Not Subject to Any Waiver.**

Swartz's and Quinn's primary defense that no "disqualifiable" conflict existed because the RTW Clients purportedly waived Schulte's conflicted representation of Plaintiff fares no better here than it does in Schulte's Opposition to the RTW Defendants' pending Schulte DQ Motion. Opp. at 11.

*First*, a plain reading of the relevant provisions of the RTW Clients' engagement letter with Schulte finds that the advance waiver expressly carves out the type of conflict present here. The waiver only permits concurrent representations [redacted] (ECF 95-1, Engagement Letter). In fact, the parties' negotiation history demonstrates that the RTW Clients [redacted] (ECF 128 at 20-21; ECF 129 ¶ 8; ECF 129-1, 11/4/2021 Lee Call Notes). Moreover, to the extent the waiver language is ambiguous, such "ambiguity in an engagement letter must be construed in favor of the reasonable

expectations of the client." *Netlist*, 2016 WL 8905079, at *4. Here, that means the waiver must be construed to have precluded Schulte's representation of Plaintiff in this action.

*Second*, the advance waiver was insufficiently specific to constitute informed consent by the RTW Clients. "To be informed, the client's consent to dual representation must be based on disclosure of all material facts the attorney knows and can reveal." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* 6 Cal.5th 59, 84 (2018). This includes explaining the risk of divided loyalties, potential limitations on advocacy, and any other material risks to the client. *Sharp v. Next Entertainment, Inc.,* 163 Cal.App.4th 410 (2008). Courts have emphasized that the waiver must be specific and tailored to the circumstances, identifying the adverse client and the nature of the potential conflict as fully as possible without breaching confidentiality. *Lennar Mare Island, LLC v. Steadfast Ins. Co.,* 105 F.Supp.3d 1100 (2015). Here, the purported waiver did not provide any of the limitations, detail, or information necessary for this Court to even entertain its admissibility.

*Third*, the type of conflict at issue in this case is not waivable, as no reasonably competent attorney could think Schulte could diligently represent the RTW Clients while also suing them on the very substance of its own counsel. *See* CA Rule 1.7(a) (prohibiting concurrent, adverse representation unless the lawyer reasonably believes they can provide competent and diligent representation, the representation is not prohibited by law, and each affected client gives informed written consent); New York Rule 1.7(b) (similar). Realizing this, Schulte never even tried to address, let alone dispel, the inevitable consequences of its conflicted concurrent representation, such as the trial taint and the complete abandonment of Schulte's duty of loyalty to the RTW Clients.

**2. Schulte's Loyalties Were Conflicted.**

Plaintiff's argument that Swartz is not subject to automatic disqualification because he never *personally* represented the RTW Clients, and thus had no individual loyalties to uphold (Opp. at 13-14), completely misses the point: automatic

disqualification is necessary "not merely to protect against 'specific acts of disloyalty or diminution of the quality of the attorney's representation,' but rather because such conflicts jeopardize the very 'integrity of the attorney-client relationship.'" *Netlist*, 2016 WL 8905079, at *5. For this reason, "California law mandates disqualification *when a firm* has become entangled in a concurrent client conflict[.]" *Id*. (emphasis added); *accord Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*, 659 F. Supp. 3d 1061, 1069 (N.D. Cal. 2023) (disqualifying entire firm on concurrent representation grounds even though defendants' counsel never personally represented plaintiff). This is because "'[a] firm of lawyers is essentially one lawyer for purposes of the rules' on attorney conflicts of interests[.]" *Orange Cnty. Apartment House Ass'n v. City of Santa Ana*, 2023 WL 4681575, at *5 (C.D. Cal. May 16, 2023) (imputing concurrent conflict to entire firm); *ESC-Toy*, 2024 WL 1335079, at *9 (imputing conflict of attorney who was "functionally" co-counsel); CA Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule[] 1.7[.]"). New York caselaw directs the same outcome. *See Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) (disqualifying plaintiff's counsel because counsel's other firm represented defendants in unrelated litigation involving similar legal issues, thus implicating conflicting counsel's "fiduciary duty of undivided loyalty and allegiance").

Plaintiff's caselaw on this point is unavailing. In *Spagnuoli v. Louie's Seafood Rest., LLC*, defendants moved to disqualify plaintiffs' putative class counsel due to its representation of one class member in another litigation. 20 F. Supp. 3d 348, 351 (E.D.N.Y. 2014). The *Spagnuoli* court noted that potential conflicted loyalties among plaintiffs in different litigations was an issue of class counsel's adequacy and declined to be the first court to consider it grounds for disqualification. *Id*., F. Supp. 3d at 357. That is hardly comparable to the present circumstances, where Swartz is subject to automatic disqualification because his representation of Plaintiff is directly adverse to Schulte's concurrent representation of the defendants *in this action*.

Further, Plaintiff's reliance on *End of Rd. Tr. v. Terex Corp.*, an unreported District Court of Delaware case applying that state's rules of professional conduct and disqualification jurisprudence, is completely irrelevant to this Motion. 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002). If anything, the court's observation in *End of Rd. Tr.* that "an attorney's conduct is measured by the ethical standards of the court before which the attorney appears" supports the RTW Defendants' position that this Motion is subject to California state disqualification standards. *Id.*, 2002 WL 242464, at *2. In sum, the ABA Rules, the CA Rules, and Ninth Circuit caselaw all dictate Swartz's automatic and immediate disqualification.

**B. <u>The Facts Require Swartz's Disqualification.</u>**

Plaintiff's effort to evade its counsel's disqualification by pointing to a "modified substantial relationship test" is desperate and unavailing.

*First*, Swartz has no answer to California's "hot potato" doctrine—*i.e.*, the rule that an attorney cannot escape disqualification by unilaterally converting a concurrent conflict into a successive one. Motion at 12 (citing *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1084 (C.D. Cal.2015); and *Steines v. Crown Media U.S., LLC*, 2019 WL 13244574, at *6 (C.D. Cal. Jan. 16, 2019) (an attorney cannot evade automatic disqualification "by unilaterally converting a present client into a former client prior to the hearing on the motion for disqualification") (quoting *Netlist*, 2016 WL 8905079, at *3)).

*Second*, even the "modified" test promoted by Plaintiff calls for Swartz's disqualification. Opp. at 14-15. The modified substantial relationship test does not, as Plaintiff suggests, require the RTW Clients to "produce specific evidence that Swartz personally had access to confidential information." Opp. at 15. In fact, Plaintiff's case *Adams v. Aerojet-Gen. Corp.*, explicitly states that "[d]isqualification of an attorney from undertaking representation adverse to a former client *does not require proof* that the attorney *actually* possesses confidential information." 86 Cal. App. 4th 1324, 1331 (2001) (first emphasis added). Rather, Plaintiff's own caselaw instructs that the

modified substantial relationship test asks whether the attorney "was in a position vis-à-vis the client to *likely* have acquired confidential information[.]" Opp. at 15 (quoting *Ochoa v. Fordel, Inc*., 146 Cal. App. 4th 898, 908 (2007); *accord Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485, 507 (2022) (test requires showing that "the attorney *was positioned* during the first representation so as to make it *likely* the attorney acquired confidential information")). This is consistent with the law cited in the Motion emphasizing that "[i]t is well settled actual possession of confidential information need not be proved in order to disqualify the former attorney." *Aguilar v. Costco Wholesale Corp*., 2024 WL 1600647, at *3; *see also Steines*, 2019 WL 13244574, at *7 (California courts "have recognized the dangers of the swearing matches that would result if they required proof of *actual* knowledge of material confidential information,' as it would 'tear[ ] aside the protective cloak drawn about the lawyer-client relationship.'") (citation omitted).

The law is clear: the RTW Defendants need only establish a likelihood that while Swartz was at Schulte he was in position to obtain confidential information about the RTW Clients that would be material to this action—and he most certainly was. The RTW Defendants have made this requisite showing multiple times based on the following (non-exhaustive) list of undisputed record facts:

- Starting in November 2021, Schulte provided the RTW Clients regulatory counsel on [redacted] (ECF 95-1, Engagement Letter; ECF 95-2, Schulte Invoices).
- During the course of Schulte's representation of the RTW Clients, Schulte regulatory attorney Adriana Schwartz regularly consulted with Schulte securities litigators, *including members of Plaintiff's initial litigation team in this action*, regarding the RTW Clients' matters (ECF 95-2, Schulte Invoices; ECF 112 ¶ 23; ECF 113 ¶ 4);

- On June 7, 2024, Adriana Schwartz had a conversation with Schulte litigation partner Randall Adams regarding the RTW Clients' [redacted] (ECF 95-2, Schulte Invoices; ECF 112 ¶ 24; ECF 113 ¶ 5; ECF 116 at 12 n.5);
- Adams did not bill the RTW Clients for that conversation (ECF 113 ¶ 5);
- In spring and summer 2024, Swartz and Adams advised Politan regarding the proxy battle over control of Plaintiff's Board at issue in this action (ECF 113 ¶ 8);
- Adams was a member of the Schulte litigation team, led by Swartz, that represented Plaintiff in this action from October 2024 until April 2025 (ECF 1);
- On July 3, 2024, Adriana Schwartz discussed the topic of [redacted] with the RTW Clients over the course of a 14-minute phone call and [redacted] (ECF 95-3, Perry Action Email; ECF 112 ¶¶ 25, 28-29).
- On July 3, 2024, Adriana Schwartz informed the RTW Clients that [redacted] (ECF 112 ¶ 29);
- Schulte did not install an ethical wall between Adriana Schwartz and the Schulte attorneys representing Politan (and later, Plaintiff) until August 27, 2024 (Opp. at 7);
- Swartz filed the Original and Amended Complaints on behalf of Plaintiff on October 25, 2024 and December 30, 2024, respectively, suing the RTW Defendants [redacted] (ECF 1, 100);

The foregoing record facts irrefutably demonstrate that Swartz was in a position to, *and did*, receive material confidential information regarding the RTW Clients while he was at Schulte.

Plaintiff concedes that Adriana Schwartz, the RTW Clients' regulatory attorney, frequently consulted Schulte's securities litigators on the RTW Clients' matters,

including during the period Plaintiff alleges the RTW Defendants engaged in the alleged misconduct at issue in this Action. Schulte attorneys have admitted that such consultations were not always billed, demonstrating that neither Schulte nor the RTW Defendants can definitively establish how often such conversations took place or the participants of such exchanges. Swartz's argument that he never *billed* the RTW Clients is thus unavailing and irrelevant semantics. Opp. at 17; ECF 207-3, Decl. of Davis, ¶ 10. These cross-departmental consultations freely continued, unimpeded by any ethical wall despite Schulte's acknowledgement of a conflict, through the end of August 2024. Even after such a wall was created, Swartz worked with Randall Adams—who demonstrably advised on the RTW Clients' matters—on this Action for months and thus was exposed to those client confidences during the preparation of the Original and Amended Complaints, Plaintiff's Opposition to Kiani's and RTW's Motions to Dismiss, *and* Plaintiff's Opposition to the Schulte DQ Motion. Moreover, Plaintiff's Opposition to the Schulte DQ Motion was not only accompanied by Adriana Schwartz's declaration, which discussed RTW Client confidential materials, but itself cited to the RTW Clients' sealed confidential materials (and Schulte filed such information on the public docket in violation of the Court's sealing Order). That alone is proof that Swartz saw, used, and relied on the RTW Clients' confidential materials to Plaintiff's benefit in this Action.

As to Plaintiff's perennial argument that Schulte's representation of the RTW Clients bears no factual or legal similarity to Swartz's representation of Plaintiff in this action (Opp. at 15-16), the RTW Defendants refer to the extensive prior briefing (under both California and New York law) and record evidence to the contrary. *See* Schulte DQ Motion at 13-14; (ECF 94 at 23; ECF 128 at 13-15; ECF 95-2, Schulte Invoices; ECF 95-3, Perry Action Email; ECF 129-2, 7/3/2024 Lee Call Notes). Simply put, that argument is entirely hollow. Indeed, the only response Plaintiff could conjure up is Swartz's own say-so that he does not have any of the RTW Clients' confidential information. This is patently insufficient: even where courts have no reason to doubt their veracity, "declarations alone are not enough to establish that no confidential

information was actually conveyed." *Aguilar v. Costco Wholesale Corp.*, 2024 WL 1600647, at *5 (C.D. Cal. Jan. 29, 2024); *accord State Comp. Ins. Fund v. Drobot*, 2014 WL 12579808, at *8 (C.D. Cal. July 11, 2014); *see also Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1390 (N.D. Cal. 1992) (rejecting that declarations "by self-interested parties" may rebut presumption of shared confidences because "the rebuttal evidence that would inevitably be put forward in every case of this sort, would raise a strong sense of impropriety"). Here, Swartz's declaration should be afforded even less weight considering his and his litigation team's lack of transparency and candor since the RTW Clients first raised the disqualification issue in August 2024. *See* ECF 128 at 11-14 (detailing extensive inconsistencies and false narratives proffered by Schulte and its attorneys regarding its conflicted representations).

### C. <u>Quinn Cannot Escape Disqualification Either</u>

Plaintiff summarily argues that Quinn is not subject to disqualification because CA Rule 1.10(a) only precludes representations "if a lawyer 'practicing alone would be prohibited from doing so by Rule 1.7 or 1.9.'" Opp. at 19 (citing CA Rule 1.10(a)). But that is *precisely* the case here: Swartz is prohibited from representing Plaintiff under CA Rule 1.7, which governs concurrent representations. *See e.g., supra,* Section III.A. In the alternative, Swartz is barred from representing Plaintiff under CA Rule 1.9, which governs successive representations. *See e.g., supra,* Section III.B.

By continuing his representation of Plaintiff at Quinn, Swartz has imputed the conflict that mandates his own disqualification to the rest of his new firm. California requires Quinn's vicarious disqualification if the conflict arose from a representation at the attorney's prior firm *and* the conflicted attorney *either* (i) "substantially participate[d] in the same or a substantially related matter"; or (ii) was not "timely screened from any participation in the matter[.]" CA ST RPC Rule 1.10(a)(2)(i) and (ii); *see also Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199, 1206 (N.D. Cal. 2022) ("vicarious disqualification is the general rule and courts should presume knowledge is imputed to all members of a tainted attorney's law firm" unless the firm demonstrates

that "the practical effort of formal screening has been achieved") (citations omitted). Quinn fails on both prongs of this test. Whether Swartz is disqualified on a concurrent (CA Rule 1.7) or successive (CA Rule 1.9) representation basis, Quinn is subject to vicarious disqualification, and it only has Swartz's hubris and refusal to erect an ethical wall and step aside in favor of one of the many capable attorneys at Quinn to blame.[2]

**D. Swartz and Quinn Put Plaintiff in this Position.**

Plaintiff protests against Swartz's and Quinn's disqualification because "the right of a party to be represented in litigation by the attorney of [its] choice is a significant right [that] ought not be abrogated." Opp. at 22. The Opposition accuses the RTW Defendants of "manufactur[ing]" Swartz's disqualification and characterizes the Motion as "tactical abuse" to cast itself as the victim in these circumstances. But Plaintiff cannot hide behind arguments of prejudice when the facts and the record reflect that Plaintiff's own counsel, not the RTW Defendants, put it in this position.

Schulte rejected the RTW Clients' repeated extra-judicial requests to withdraw from its conflicted representation of Plaintiff in this Action. Had Schulte acknowledged the conflict when the RTW Clients first raised it in August 2024—months before this Action was even filed—Plaintiff could have avoided switching counsel at all. Had Schulte acknowledged the conflict when the RTW Clients raised it against in November 2024, Plaintiff could have found new counsel before the action made any progress and thus with minimal to no alleged prejudice. Had Swartz taken stock of his circumstances and tapped another Schulte attorney to litigate the Schulte DQ Motion, he could have avoided the undeniable direct exposure to the RTW Clients' confidential information

[2] "Where California law mandates automatic disqualification, the Court may not substitute a more lenient remedy." *Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*, 659 F. Supp. 3d 1061, 1067 (N.D. Cal. 2023) (quoting *Netlist*, 2016 WL 8905079, at *4)

which, as directed by *NBC Bank v. Murex, LLC*, now requires his disqualification. 259 F. Supp. 3d 38, 73 (S.D.N.Y. 2017).[3]

Worse yet, Swartz had an opportunity to mitigate the disqualification issue when he moved to Quinn, but declined to do so. Swartz could have walled himself off and transferred the case file to an untainted litigation team from the many capable attorneys at Quinn. Instead, Swartz remains on the case and consequently has tainted all of Quinn. Simply put, Plaintiff only has Swartz to blame for this Motion. For their part, the RTW Defendants acted as swiftly as they could to bring this disqualification issue to the Court, as discovery has not even commenced in this Action. Thus, any protestations of Plaintiff as to prejudice are entirely hollow and again, would solely be the fault of Swartz.

It bears repeated emphasis that Plaintiff's submission of a Declaration from Harry Davis, Deputy General Counsel at Schulte, in support of Plaintiff's Opposition to this Motion confirms what the RTW Defendants have suspected all along: Schulte and Quinn continue to have open lines of communication regarding the representation of Plaintiff in this Action, notwithstanding Schulte's non-appearance in the case post-transfer. ECF 207-3. To this end, Swartz and Quinn's representation of Plaintiff in this Action against the RTW Defendants screams impropriety. It is unethical, it is prejudicial, it is unfair, and it runs counter to the "integrity of the bar," which is this Court's "paramount" concern. *Aguilar v. Costco Wholesale Corp*., 2024 WL 1600647, at *2 (C.D. Cal. Jan. 29, 2024) (citation omitted); *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1087 (C.D. Cal. 2016) ("[I]t is relatively unimportant whether the status or misconduct claimed to warrant disqualification is proscribed by a particular ethical norm or disciplinary rule or may be characterized [instead] as a failure to avoid the appearance

[3] Plaintiff's accusation that the RTW Defendants purposely tainted Swartz is belied by their repeated efforts to avoid moving for disqualification altogether. Moreover, the RTW Defendants cited *Murex* in their letter motion to the Court to file its Schulte DQ Motion under seal. (ECF 89 at 2). Thus, Swartz was on notice of the *Murex* issue prior to filing Plaintiff's Opposition.

of impropriety.”).[4] As such, it is imperative that this Court grant this Motion, disqualify Swartz and Quinn, and order that each must: (a) refrain from any and all communications with Plaintiff's counsel in this Action and in any manner relating to the RTW Clients; and (b) refrain from providing, conveying, granting access to, or otherwise sharing with any counsel for Plaintiff any materials or information related to, regarding, obtained through, or otherwise connected to Schulte's representation of the RTW Clients.

## IV. CONCLUSION

The CA Rules, the ABA Rules, all relevant California and New York case law, fundamental fairness, and the very integrity of this Action, mandate granting of the Motion and the disqualification of Swartz and Quinn. The RTW Defendants therefore respectfully request the Court immediately disqualify Swartz and Quinn from representing Plaintiff in this Action, and that the Court grant such other and further relief as the Court deems just and proper.

Date: September 15, 2025

Respectfully Submitted,
**MICHELMAN & ROBINSON, LLP**

By: */s/ Warren A. Koshofer*
Sanford L. Michelman
Mona Z. Hanna
Warren A. Koshofer
Molly F. Wolfe (*admitted pro hac vice*)
*Attorneys for Defendants Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC*

[4] The Opposition says nothing of how the specter of Schulte's prior entanglements in this Action will inevitably taint these proceedings moving forward so long as Swartz remains in the case. Here, Swartz's continued involvement as counsel for Plaintiff creates multiple and inevitable grounds for mistrial and for appeal.

**Certification of Compliance with L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Rescue 1 Financial, LLC, certifiesthat this brief contains 5,019 words, which complies with the word limit of L.R. 11-6.1

Date: September 15, 2025 By: *<u>/s/ Warren A. Koshofer</u>*
Sanford L. Michelman
Mona Z. Hanna
Warren A. Koshofer
Molly F. Wolfe (*admitted pro hac vice*)
*Attorneys for RTW Defendants*