UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, ) CERTIFIED TRANSCRIPT
)
Plaintiff, )
vs. )
) SACV-25-03188-JVS
JOE E. KIANI, et al., )
Defendants. )
----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

September 22, 2025

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(612) 804-8655

APPEARANCES OF COUNSEL:

For the Plaintiff:

MICHAEL E. SWARTZ
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000

SYDNEY LEIGH MARTIN
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

For the Defendants:

MONA Z. HANNA
MICHELMAN ROBINSON, LLP
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
(714) 557-7990

02:37 SANTA ANA, CALIFORNIA; MONDAY, SEPTEMBER 22, 2025; 2:39 P.M.

THE CLERK: Calling Item No. 5, SACV-25-03188-JVS, Masimo Corporation versus Joe E. Kiani, et al.

Counsel, please state your appearances for the 02:39 record.

MS. HANNA: Good afternoon, Your Honor. Mona Hanna appearing for the RTW defendants.

THE COURT: Good afternoon.

MR. SWARTZ: Good afternoon, Your Honor. Michael 02:39 Swartz from Quinn Emanuel for Masimo.

THE COURT: Good afternoon.

MS. MARTIN: Good afternoon, Your Honor. Sydney Martin for Masimo.

THE COURT: Okay. There was an informal request 02:39 to the clerk that we seal this hearing. I'm not prepared to do that. I think this is a matter of significant public interest. The initial proxy fight generated substantial litigation, which I presided over, and a fair amount of press. It seems to me that there is genuine public interest 02:40 in how that proxy fight was fought and whether proper means were or were not used in waging that fight, so I'm not going to seal the courtroom.

If after the fact you want to make proposals for redacting a particular phrase or two, we'll hold the release 02:40 of the transcript for seven days after you get the

02:40 transcript. I'm not saying I'm going to redact anything, but I'll certainly give it consideration.

Okay, it's the RTW defendants' motion.

MS. HANNA: Thank you, Your Honor.

02:40 And I do want to thank the Court for the tentative. It was very helpful. I will address certain items that were raised in the tentative. I am by no means waiving any of the arguments that were raised in our pleadings.

02:41 THE COURT: Understood.

MS. HANNA: I'd like to briefly discuss the choice of law issue. I then would like to take a look at the concurrent representation issue that the Court raises, and finally, why we believe that the motion to disqualify 02:41 Schulte is not moot, and we would like a ruling on that as well if the Court is inclined to change its tentative with respect to the analysis.

On the choice of law issue, I just want to explain the reason why we used California law in our pleadings with 02:41 respect to the motion to disqualify the Quinn firm. That was filed after the motion was transferred. It deals with attorneys that are licensed in California. Mr. Swartz has submitted pro hac to discipline pursuant to the California Bar Association, ABA, by being before the Court, so we 02:42 thought that it was appropriate to use California law.

02:42 However, I understand the Court's reasoning that the issue of the disqualification should be assessed when the acts occurred as opposed to when the litigation was filed.

THE COURT: And according to the law of the forum where the case was initially filed. 02:42

MS. HANNA: We cited to the Court the Advanced Messaging Tech case, which is a Ninth Circuit decision that said that the Court should apply California law in deciding a motion to disqualify, and that's the case that we relied upon. 02:42 The Van Dusen case that was cited by plaintiff did not deal with the disqualification issue. And the reason that we understood the Ninth Circuit was using California law when it's looking at disqualifying an attorney appearing in this court is because those are the standards that apply to an attorney appearing in California. 02:43

We understand that there was also cited a district court decision dealing with Texas law in which the Court applied Texas law because that was the expectation of the attorneys that sought to be disqualified, that Texas law would apply. 02:43 But in our case, the Quinn firm never had that expectation because our motion to disqualify them was filed after the case was transferred to California.

But having said that, we do not believe that a different result is implicated by using New York law, and I will address New York law in my arguments today with respect 02:43

02:43 to the motions to disqualify.

With respect to the tentative, I believe the Court went right to the issue of whether or not disqualification would be appropriate under a concurrent representation analysis, and I believe that's correct. I don't waive -- 02:44 I'm sure counsel might raise the subsequent representation, but a concurrent representation analysis is appropriate to apply here.

I will talk about whether or not we've made our 02:44 prima facie case with respect to the fact that a conflict existed. Once a conflict is found to have existed, then the question becomes and the burden shifts to plaintiff to establish one of two things: the conflict was waived; or, secondly, there was -- they rebutted the presumption that 02:44 confidential information was shared, and I'll talk about both of those elements as well.

Concurrent representation, when we're looking at disqualification for concurrent representation here, there is no question that Schulte represented both plaintiffs and 02:45 filed the original and the First Amended Complaint suing RTW clients under Sections 13 and 16 and allegations of empty voting concurrently with representing the RTW clients on general securities matters, including their disclosure obligations under Section 13 and 16. That is a prima facie 02:45 undisputed case of a concurrent representation conflict

02:45 under not only New York law but New York disqualification rules.

Once that prima facie case has been made, now the burden shifts to Masimo's counsel to establish that under 02:45 these circumstances, that conflict does not require disqualification. We don't have to show that the matters were related when that's the case because that is the Murex case that we've cited all through our paperwork. If there is a concurrent representation where there is a direct 02:46 conflict, it is a disqualifiable violation unless one of those two matter, the issues that I've cited.

Now, there is a lot of briefing by both sides about the engagement agreement and the advance waiver, and whether or not this was the same matter under that 02:46 agreement. I don't waive our arguments that we think matter is read more broadly than what the tentative seems to imply. However, I want to look at exactly the issue that the Court has highlighted applies here and provide the evidence to the Court that that is exactly the evidence before the Court.

02:46 I'm citing to the tentative at page 9 where the Court says after it goes through its concurrent representation and whether or not "matter" involves general securities advice or whether it means advice regarding the allegations in the Masimo Complaint -- the Court says: 02:47 "Nonetheless, the allegations of violations of Sections 13

02:47 and 16 of the Exchange Act brought by Schulte on behalf of Masimo could still be the same 'matter' under the advance waiver if Schulte provided advice to RTW clients on their actions underlying these allegations."

02:47 I understand that to mean that if it is shown that RTW reached out to Schulte and inquired about advice regarding Section 13, Section 16, empty voting, as it pertained to the Masimo proxy fight, which are the subject of the allegations in the First Amended Complaint, that that 02:47 would be the same matter; and, therefore, the advance waiver would not save disqualification in this case.

I submit to the Court that's exactly what the evidence shows, that in this case, RTW specifically reached out to Ms. Schwartz, Adriana Schwartz, in this case -- sorry 02:48 that all the names are very close in pronunciation. And here's the evidence I would ask the Court to consider with respect to this very issue because I think it's a central issue. It is undisputed that a phone call occurred on July 3, 2024, between RTW's counsel and Schulte's regulatory 02:48 counsel, Ms. Schwartz. What is very compelling here is that Masimo's counsel gave two very different versions to this Court about what happened during that call, which I'll submit brings into question the veracity of the declaration submitted.

02:49 Specifically, I invite the Court's attention to

the refusal letter that was initially sent in response to our request that they withdraw because of this unwaivable conflict. That is ECF 96-2. This is the letter that general counsel submitted explaining the call between Ms. Schwartz and RTW. On pages 3 and 4 of that letter, which was dated November 15, 2024, after advising that they have fully -- this would be the Schulte firm of course -- have fully investigated the facts surrounding our allegations of unwaivable conflict, they described the conversation between Ms. Schwartz and RTW as follows:

"In the summer of 2024, Alice Lee, RTW's senior counsel, contacted Ms. Schwartz seeking to obtain general advice on the consequences of empty voting regarding trading that RTW had already engaged in. Ms. Schwartz asked the name of the issuer at the beginning of the conversation, and as soon as Ms. Lee mentioned that it related to trading in Masimo stock, Ms. Schwartz immediately shut down the conversation explaining to Ms. Lee that Schulte could not provide legal advice to RTW relating to Masimo given our long-standing representation of Politan and our involvement on any proxy contest on behalf of Politan related to Masimo.

That was the initial version that we heard from Masimo's counsel.

THE COURT: Assuming those facts are true, isn't that the appropriate response to take assuming that no other

02:51 facts cut off the conflict right there?

MS. HANNA: If those facts are true, then yes.

THE COURT: Okay.

MS. HANNA: But that's not what occurred.

02:51 THE COURT: Okay.

MS. HANNA: Because what we did in response to those claims is we submitted the phone records of Ms. Lee indicating this was not a one-minute call where you call up, ask for advice, immediately ask who is this person, and shut 02:51 down the call. No. This was two consecutive calls totaling 14 minutes long.

So what do we get in response to that? A declaration by RTW's regulatory counsel, Ms. Schwartz, identifying what was discussed in that call. And her 02:51 declaration, which is Docket 112, completely contradicts the first version of the events. Now Ms. Schwartz says, after she sees the phone records, that she did not ask about the issuer in the beginning of the call. She didn't ask about it until the end of the call. That's paragraph 31. She 02:52 doesn't recall ever mentioning that she represented Politan or said the word "Politan," only that Schulte represents the activist shareholder in Masimo. Again, very different.

THE COURT: Yeah, but by that point, it didn't take much guessing to figure out who the active shareholder 02:52 was.

02:52 MS. HANNA: Well, except that we have -- if you'll allow me.

THE COURT: Please.

MS. HANNA: We have contemporary -- so in response to Ms. Schwartz's declaration, we then submit highly confidential attorney/client notes by Ms. Lee that contemporaneously documented the conversation between Ms. Lee and Ms. Schwartz, that pursuant to her declaration, Ms. Lee's declaration, was kept in the normal course of business at the time that the conversation was happening in chronological order as the conversation took place, and I will highlight that to the Court in just one minute.

THE COURT: Okay.

MS. HANNA: There's just two more discrepancies in Ms. Schwartz's declaration.

Ms. Schwartz says RTW -- that Ms. Lee identifies to Ms. Schwartz that RTW had been accused of engaging in an empty voting scheme with response to Masimo during this call. And at that time, Ms. Schwartz goes on to say I was well aware that Schulte was representing a client that was directly adverse to Masimo, and I declared a conflict because of the long-standing relationship with activist shareholder.

So what did we have to do in response to that? We had to submit Ms. Lee's notes. They are Docket 129-2. It's

02:54 of the July 3, 2024, conversation. And what do we see in those notes? We see eight bullet points with respect to the conversation between Ms. Lee and Ms. Schwartz where Ms. Schwartz gives advice about: "There's no rule that your
02:54 voting necessarily aligns with your economics." She talks about the SEC --

Your Honor, can I submit an additional copy to the Court? I see that the Court --

THE COURT: Sure, if you have an extra handout.

02:54 MS. HANNA: Docket 129-2. I have an extra copy.

THE COURT: If it's in the pleadings on the motion, just tell me where. I've got them here.

MS. HANNA: It's Docket 129-2, which would be attached to the supplemental declaration of Ms. Lee.

02:55 THE COURT: Well, apparently I don't have that up here.

MS. HANNA: Your Honor, may I approach?

THE COURT: Yes.

(Document handed to the Court)

02:55 MS. HANNA: What the Court is reviewing now is the contemporaneous notes that I mentioned earlier by Ms. Lee.

THE COURT: Right.

MS. HANNA: Ms. Schwartz talks in the first bullet point about the Perry SEC investigation but then says:
02:55 "Very different fact pattern. SEC where they went with a

02:56 13D violation. What the SEC was bothered by empty voting. No rule you've violated." So there is advice there with respect to whether or not they violated the 13D rule. If we go down three lines from the first bullet point, it says: 02:56 "Perry was very vocal and involved. Doesn't sound like your fact pattern."

So for Ms. Schwartz to argue that she wasn't given a fact pattern behind the request for this advice is false. She's specifically distinguishing the fact pattern of RTW's 02:56 involvement with that of the Perry investigation. And then she says: "No rule that prohibits voting shares in excess of economic position. Not saying you violated something."

Number two bullet point was: "Happy to send you the Perry no-action letter."

02:57 Now, No. 3 is very interesting. This is the contraction of "We're." "We're not counsel on activist campaign." Ms. Lee's notes clearly indicate that Ms. Schwartz's recollection of saying that we represent the activist shareholder was false. These contemporaneous notes 02:57 say the exact opposite, and Ms. Schwartz admits she never mentioned Politan.

She goes on now -- this is a continuing conversation. After she talks about the activist campaign -- so there's no dispute both sides know we're talking about 02:57 Masimo. Both sides have admitted that we're calling

regarding this proxy fight at Masimo. After this advice, we still have bullet points 4, 5, 6, 7, and 8 dealing with specific legal advice regarding the fact pattern that Ms. Lee shared with Ms. Schwartz in a confidential client/attorney communication directly contradicting Ms. Schwartz's declaration.

I would submit that given the discrepancy between the narrative regarding Ms. Schwartz's declaration -- between the refusal letter and between her declaration that there is a question of credibility with respect to that.

Now, I think what's very important is a footnote. Before I get to that, once we show that there is representation of two different clients that are directly adverse to one another, there is a presumption that confidential information was shared. And the reason that there is that presumption is so that RTW wouldn't have to be in this untenable position. We are sharing attorney/client communications in court before our opposing counsel to establish that there was direct legal advice given after knowledge that there was a conflict and after knowledge regarding RTW's role with respect to the proxy. We're doing that under seal, but now it is before opposing counsel.

The tentative cited something about the timing that I think is very important that I follow up on. The Court noted that the call happened on July 3 and voting had

02:59 happened on July 1, so really was this advice relied upon? I'm not sure that that's the standard, but I want to highlight the timing of this. The July 1 vote didn't count because Politan had requested that the vote be continued. I 03:00 also want to highlight that on the same day as the call between RTW and Ms. Schwartz, Politan sends a letter to Masimo claiming that there is manipulation of the shareholder vote. The very same day that Ms. Lee talks to Ms. Schwartz, Politan sends a letter saying that there was 03:00 voter manipulation.

Now, could that be a total coincidence? I don't know. But certainly the timing is suspect, and at the very, very least, the timing leads to an inference of impropriety, but that's where we are. On June 3, Politan sends a letter 03:01 saying that there is voter misconduct. On July 12, Politan sends another demand to continue the vote. July 15, Masimo resets the record date for August 12. August 12 is the second record date, and August 21 is when the Complaint alleges RTW voted its shares.

03:01 No ethical wall was erected until August 27. Ms. Schwartz in a signed declaration claims to have known that there was a direct conflict on July 3. There is evidence that she was asked for legal advice regarding the exact allegations that are now the subject of this 03:01 Complaint, and she does nothing to erect an ethical wall.

She continues to have open, unfettered communication with litigation counsel, and the presumption is that she's shared confidential information. We don't have to prove it. That's their burden to establish that they did not. But no ethical wall was erected until August 27.

When we look at the reasons for these types of motions to disqualify, I will certainly submit with all due respect to counsel that this is not the kind of motion I like to appear on and argue, but it is required when it is necessary to preserve the integrity of the judicial system, and I think this is one such situation.

The Second Circuit in this case has said that when there is any doubt about whether or not these ethical rules have been violated, the doubt should be in favor of disqualification. That's the Hull versus Celanese Corporation case, 513 F.2d at 568. So if there's any question here about whether or not there was that discussion that is clearly documented in Ms. Lee's notes before the Court, then disqualification would be the appropriate outcome.

Schulte was aware of the conflict on July 3. They took substantive actions in favor of Politan and directly adverse to RTW between July 3 and August 27 without erecting an ethical wall. And now we're looking at whether or not they can possibly rebut the presumption that they shared

03:03 confidential information. We now know that the advance waiver does not apply because we have evidence directly contradicting their position that they did not give legal advice with respect to the Masimo proxy vote. We have 03:04 direct evidence on that.

So now we have to look to see whether they can rebut the presumption. And the way that courts determine whether or not the presumption can be rebutted is whether or not an ethical wall was erected immediately upon learning of 03:04 the conflict, and that answer is no as well.

So here we have made a prima facie case with respect to the conflict. We have established in my opinion that the advance waiver does not apply here, because as the Court found, when it is the same matter, asking for legal 03:04 advice regarding the allegations in this very case, they're not saved by the advance waiver, and the wall was not erected timely.

But the most blatant violation of the attorney/client relationship here is when the Masimo 03:05 attorneys decided to handle the opposition to the disqualification motion themselves. They now have access to all of the confidential information. The call with Ms. Lee and Ms. Schwartz, they have that now. All of the billing between RTW and Ms. Schwartz over the years as to advice 03:05 she's given, they have that now. They were actively

03:05 involved in investigating the motion to disqualify and filing an opposition.

We've cited the Court to a case that we think is directly on point, the Murex case. There the Court found as 03:05 one of the factors as to why disqualification was appropriate was exactly what Masimo's counsel has done in this case. Instead of walling themselves off and getting different counsel to oppose the disqualification motion, they actively authored the opposition, and thereby 03:06 intentionally came into contact with the very confidential information that they should have not been entitled to have, and that's where we are now.

They have this information, and they can use that information on behalf of Politan, the advice that was 03:06 sought, a pattern and practice, prior activity with respect to taint. All of this would not be available to them. It would have been protected by attorney/client privilege but no longer.

Finally, with respect to tainting the trial in 03:06 this matter, RTW fully intends to rely on the legal advice of Schulte as part of their defense in this case. We intend to call the Schulte attorneys as to the activities undertaken by RTW that are alleged to have occurred in this case. So there will definitely be a taint of the trial with 03:07 respect to this case.

03:07 And the fact that -- and now that I've gone through the Schulte analysis, we obviously would argue, as we did in our papers and I won't belabor it, if the Court finds that disqualification would have been appropriate for 03:07 Mr. Swartz when he was in the Schulte firm, it definitely would apply now because he has now tainted the Quinn firm. He could have erected the wall when he came over, gotten a different group of attorneys to represent Masimo in that case once Quinn took over. He didn't do that. He continued 03:07 to be the lead author and the lead counsel in the case, continued to share all the information that he's learned, continued to be actively involved. By doing so, he's imputed now the actions to the entire Quinn firm.

And then in closing, we do not think that the 03:08 withdrawal by Schulte moots our DQ motion, and the reason is because Schulte continues to actively work with the Quinn firm and actively seeks to support them in opposing the DQ motion. In fact, their general counsel, Mr. Davis, Schulte's general counsel, is here today and has submitted a 03:08 declaration in support of the opposition to the DQ motion.

The Court still has jurisdiction. An attorney cannot escape a disqualification ruling just by withdrawing from representation. And without a Court's order with respect to that, Schulte continues to be completely free to 03:08 share information. We would like the Court to retain

jurisdiction to order that Schulte not share any such information or communicate with whatever firm is representing Masimo in this case and to retain jurisdiction to be able to enforce that ruling if it becomes necessary.

THE COURT: Okay.

MS. HANNA: Thank you for your time, Your Honor.

THE COURT: Thank you.

Mr. Swartz.

MR. SWARTZ: Thank you, Your Honor.

THE COURT: Assuming that this transcription or notes of Ms. Schwartz from the July 3, 2024, telephone call or calls -- this would clearly seem to be conveying legal advice.

MR. SWARTZ: Well, first of all --

THE COURT: No, first of all --

MR. SWARTZ: Yes, generally, as the Court noted in the tentative, general advice about Section 13 and 16. It's undisputed that the phone call was cut off. Two phone calls, 14 minutes. I don't think the tentative suggests that there was no discussion of legal advice. The tentative talked about general discussion of Section 13 and Section 16, which these notes convey. It talks about when you have a file. It talks about the background to the empty voting issue. "Happy to send you the Perry no action letter." So the tentative did acknowledge that there was some discussion

03:10 on the general topic. But the issue is was it specific to the Masimo/Politan allegation at the time about the empty voting issue?

THE COURT: Okay.

03:10 MR. SWARTZ: There's some really far-reaching allegations here. I want to clear a few things up. They repeatedly allege I left Schulte Roth & Zabel where I'd been for 26 years to avoid this conflict. I mean, that gives you a sense of the aggressiveness of the allegations they say 03:10 they're unhappy to make.

With respect to this document that we just talked about the notes, I don't have possession of these. Quinn Emanuel and I took no possession of any of the materials from Schulte when I left the firm. I don't have the sealed 03:10 versions of the Schulte motion. So all the notes and records, I had access to none of that. Quinn Emanuel has access to none of that.

So this sort of parade of horribles of taint and information, there were ethical walls imposed at Schulte in 03:11 August 2024. Immediately upon me going to Quinn Emanuel, ethical walls were imposed. There is not a shred of evidence that I personally ever represented RTW. I represented to the Court an affidavit.

Yes, we asked Mr. Davis to provide additional 03:11 support for disproving any connection. Of course I had to

talk to Schulte Roth to get that. I did not review RTW's billing records in connection with that. Mr. Davis did. They ran search terms to make sure that -- they looked at the billing entries for RTW, established I had not billed any time to RTW. They looked at other people's time entries to confirm that there were no entries of anybody talking to me about RTW. He confirmed by talking to people that there were no communications with me about RTW.

This is a very preliminary phone call. I think it's undisputed that the only discussion of this empty voting issue is on the page in front of you, Your Honor. It was brief. I have not seen these notes before, but I don't know if they were transcribed from handwritten notes. I don't know that there's a lot of significance as to the timing. But critically, under New York law, advance waivers are enforceable.

There is no question that RTW is a sophisticated legal user, and that general counsel, the chief legal officer who was speaking, is a very sophisticated lawyer who had been at Sullivan & Cromwell, Ropes & Gray, Cravath I believe, and had been practicing in the area ten years. There was negotiation over this advance waiver.

This is not a situation where Schulte sent its engagement letter and simply signed it. There was a back and forth negotiation. I think Your Honor will recall there

03:12 was a Politan negotiation because RTW did not want to sign the advance waiver, and Schulte Roth said in response, well, then we can't represent you because doing this general regulatory work is not worth it to confljict us out of other 03:13 more substantive work. Eventually, RTW said, okay, that's fine on the condition that two specific issue orders are carved out from this advance waiver. If you ever represent two specific entities, we're not waiving that conflict, but everybody else, there's an advance waiver. Masimo was not 03:13 one of those two entities.

As Your Honor pointed out in the tentative, all the conduct at issue happened before the time that this conversation took place. The notes here are July 3. There was a chronology given to you. Politan wrote a letter on 03:13 July 3 accusing Joe Kiani of an empty voting scheme. It's no wonder that when Politan writes a letter and accuses publicly Joe Kiani of entering into an empty voting scheme with RTW, that RTW's counsel will then pick up the phone to call Schulte Roth & Zabel and ask questions about it.

03:14 Their advice of counsel, this reliance on counsel, it's no defense because they talked to their counsel after the fact. They haven't told you before we engaged in the trading activity we spoke to Schulte Roth to see if it was okay. No. They're saying after Politan made the allegation 03:14 publicly on July 3 they spoke with Ms. Schwartz at Schulte,

03:14 and they went through first generically -- she said I'll send you a new action letter. And then I don't know what she's possibly -- there's this note that makes no sense to me. There's no deposition testimony here. "We're not 03:14 counsel on activist campaign."

Ms. Schwartz knew that I was involved in the Politan activist campaign. It was a big deal at Schulte Roth. If she understood that they were talking about Politan and Masimo, I can't imagine she would have said 03:14 that, and her declaration is clear that as soon as she understood they were talking about Politan and Masimo, she cut off the conversation. And that brief conversation cannot be a basis for disqualifying under the advance waiver notice.

03:15 Now, there are lots of pronouncements in this area of ethics and professional rules. One of them is that this is a discretionary issue for Your Honor, and also that conflict motions are to be strictly construed because a lot of times they're used for strategic gain. I submit, Your 03:15 Honor, that's exactly what's going on here. This one page is the most advice they say was ever transmitted. There's nothing specific. Again, it was after the fact.

They have an advance waiver recognizing that unless we're -- the advance waiver language in particular 03:15 that they signed after, again, intense negotiations says:

03:15 "Without your prior consent, Schulte may represent another client in the litigation or similar proceeding directly adverse to you while you are a client of the firm so long as the firm is not then representing you in the matter." 03:16 Directly adverse means that you and another client, Schulte, are actually on opposite sides of a litigation or proceeding.

As the argument came out, we were already representing Politan at this time. Your Honor knows that. 03:16 I was -- July 3, it was a little bit before we met, but soon thereafter, I was in your courtroom litigating this issue.

So I submit, Your Honor -- and there's overwhelming evidence -- if there's any presumption, which I don't think applies, about the sharing of confidential 03:16 information, I don't know how you could rebut it more strongly. There are no billing records. There's affidavits from Ms. Schwartz, an affidavit from Mr. Adams, an affidavit from me. I have never represented RTW. I have never seen any of this confidential information. These notes I 03:16 represent to the Court I didn't take with me to Quinn Emanuel, and I haven't read them before today.

I don't think there's a real issue about choice of law. I can answer any questions Your Honor might have on that.

03:17 I think this is the crux of the challenge to the

tentative. I think the tentative was extremely well reasoned. It's completely in compliance with New York law, which applies given the expectation of the parties, and according to Supreme Court precedent in terms of transfer cases, and also with respect to transfers made at the convenience of the parties, and the original Circuit's law continues to apply with respect to state law matters.

THE COURT: If Ms. Schulte indeed said I can't talk about this because this is Politan or Masimo, there's no such suggestion in these detailed notes.

MR. SWARTZ: No, there's no -- well, the notes cut off. I don't know that -- well, there's no dispute -- I don't know if she wrote that down or not. I mean, the fact that she didn't write down the termination of the call, that isn't dispositive of anything. It's a person's notes that --

THE COURT: Well, I mean, the suggestion in her declaration is, aha, I see a problem. Stop.

MR. SWARTZ: Right.

THE COURT: If I were making notes of that telephone conference, it seems that would be a pretty important fact to record if only to refresh one's recollection at a later date that that in fact occurred.

MR. SWARTZ: I'm at a bit of a disadvantage, Your Honor, because I don't have the original declarations that

03:18 are filed under seal because, as they said, they don't want me to see the privileged information. I don't think there's any real dispute that Ms. Schwartz cut off the phone call. I'll have to look at the -- again, these are -- this is Ms. 03:18 Lee's notes, not Ms. Schwartz's, so I don't know why Ms. Lee wrote what she did.

I don't think that there's any suggestion there, Your Honor, that anything beyond -- I mean, we don't have -- she didn't write down Ms. Schwartz told me that I can no 03:19 longer speak to you because we represent Politan. She says in her affidavit the activist. That is Ms. Schwartz. But there is no dispute there --

THE COURT: Well --

MR. SWARTZ: If I might just finish.

03:19 THE COURT: Go ahead.

MR. SWARTZ: -- that there are -- there are multiple affidavits. There's multiple -- it's undisputed that after this brief phone call that there was back and forth complaining about the advance waiver issue and saying, 03:19 well, it doesn't apply, et cetera, et cetera.

So I would submit, you know, first of all, it's a credibility determination of people who went before the Court on a pretty significant issue with respect to continued representation. As you know, I've been 03:19 representing Politan and now Masimo for a long time. I've

03:19 represented Politan on this specific issue. It's obviously significant for Politan and now Masimo for me to continue to be their counsel.

The suggestion that, oh, when I went over to 03:19 Quinn, it should go to somebody else, I mean, with respect, I'm the person who's been deeply involved in it. I've been spending hours on this case, and I'm the knowledge and the background with respect to the empty voting issue. So the suggestion they suggested that it should go to somebody else 03:20 doesn't make a lot of sense.

But at the end of the day, you have this page of notes. Yes, you're right that she didn't write down the conversation ended with her saying there's a conflict, that I can't talk anymore because this relates to Politan. But 03:20 on the other hand, there's no dispute that there was a lot of back and forth about RTW complaining that that was said after the fact.

Now, I don't have all those communications because I didn't take them with me to Quinn Emanuel. I don't know 03:20 if Mr. Davis is in a position to -- I don't know if he can be heard by the Court.

I am at a disadvantage because there's been a complaint and an allegation that if I look at confidential information, I'm tainting myself, and I can't be involved. 03:20 I haven't looked at these things, so I'm standing before you

03:21 piecing some things together that I don't have access to.

THE COURT: Okay.

MR. SWARTZ: So I can't give you much more than that. I don't know if the Court would like to hear from 03:21 Schulte's former general counsel or deputy general counsel, but he was involved in drafting those papers, and he knows all those facts. I personally don't, which is part of the point.

THE COURT: Okay.

03:21 Briefly.

MS. HANNA: Thank you, Your Honor. Just a couple of quick points.

This is the first time that we've heard that Mr. Swartz does not review the pleadings in this case. He 03:21 authored and signed the oppositions to both motions to disqualify. When we send over the unredacted versions to opposing counsel, he is on the e-mail. This is the first time that we're hearing that he has walled himself off from some documents in this case. We've never heard that before.

03:21 I do think that it's telling that he's trying to distance himself from reviewing these documents because I think he's right. It does taint the process. It does implicate a violation of the attorney/client communications.

I also want to highlight just one other thing, and 03:22 I won't take any more time from the Court. The July 3

03:22 letter that I mentioned from Politan was not made public until July 8. It is in the docket as 120-1 and 120-2. Politan made their letter public when they filed their 13D filing on July 8. When the call occurred between Ms. Lee

03:22 and Ms. Schwartz, we didn't know about the letter. That letter happened after the call, which calls into question what information did Politan rely on to make those allegations? That's why I mentioned to the Court that there is an inference of impropriety at a minimum -- at a minimum

03:23 -- but maybe more than that.

That's all I'll say. I will submit on the papers as to the other points.

THE COURT: Okay.

MS. HANNA: Thank you, Your Honor.

03:23 THE COURT: Since you're here, is there anything you want to update me on in terms of the overall litigation?

MR. SWARTZ: No. We're attempting to meet and confer in advance of the case management conference, but counsel didn't want to meet and confer until prior to this

03:23 hearing.

THE COURT: Sure.

Okay, anything further?

MS. HANNA: Nothing, Your Honor. Thank you for your time.

03:23 THE COURT: Very good. Thank you.

03:23 (Whereupon, the proceedings were concluded.)

* * *

03:23

03:23

03:23

03:23

03:23

03:23

## CERTIFICATE

03:23

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

03:23

Date: September 24, 2025

03:23

/s/ Sharon A. Seffens 9/24/25

SHARON A. SEFFENS, U.S. COURT REPORTER