UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 2:25-cv-03188-JVS-JDE Date September 24, 2025

Title Masimo Corporation v. Joe E. Kiani et al

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motions to Disqualify [90, 187]**

Before the Court are two motions. First, Defendants RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC (collectively, the "RTW Clients"), Roderick Wong ("Dr. Wong") and Naveen Yalamanchi ("Dr. Yalamanchi") (together with Dr. Wong and RTW Clients, the "RTW Defendants") move to disqualify Schulte Roth & Zabel LLP ("Schulte")[1] from serving as counsel for Plaintiff Masimo Corporation ("Masimo") in this action. (Mot., Dkt. No. 90 ("Schulte Mot.").) Masimo opposed the motion. (Opp'n, Dkt. No. 116 ("Schulte Opp'n").) RTW Defendants replied. (Reply, Dkt. No. 128 ("Schulte Reply").)

Second, RTW Defendants move to disqualify Michael E. Swartz ("Swartz") and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel" or "Quinn") from serving as counsel for Masimo in this action. (Mot., Dkt. No. 187 ("Swartz & Quinn Mot.").) Masimo opposed the motion. (Opp'n, Dkt. No. 211 ("Swartz & Quinn Opp'n ").) RTW Defendants replied. (Reply, Dkt. No. 215 ("Swartz & Quinn Reply").)

For the below reasons, the Court makes the following rulings:

- **DENIES** the motion to disqualify Schulte.
- **DENIES** the motion to disqualify Swartz and Quinn Emanuel.

[1] Since Defendants filed their motion to disqualify, Schulte merged into McDermott, Will, & Schulte LLP.

## I. BACKGROUND

### *A. Factual Background*

#### 1. Parties and Relevant Non-Parties

Masimo is a medical technology company, incorporated in Delaware and headquartered in Irvine, CA. (First Amended Complaint ("FAC"), Dkt. No. 100, ¶ 17.) Politan Capital Management ("Politan"), a hedge fund manager, is one of Masimo's largest shareholders. (Id. ¶ 31.)

Joe E. Kiani ("Kiani") is the founder of Masimo, where he was the CEO from 1989 to 2024. (Id. ¶¶ 18, 30.) The RTW Defendants are Masimo investors who have a "deep relationship" with Kiani. (Id. ¶¶ 19–29, 34.)

Schulte is a multi-national law firm that, as discussed below, has represented Politan, Masimo, and RTW Clients in various capacities. (See Declaration of Adriana F. Schwartz ("Schwartz Decl."), Dkt. No. 112, ¶ 1; Declaration of Michael E. Swartz ("Swartz Second Decl."), Dkt. 207-2, ¶ 3.) Adriana Schwartz ("Schwartz")[2] is the Schulte partner who primarily advised RTW Clients. (Schwartz Decl. ¶¶ 20–24.) Swartz is a former litigation partner at Schulte who represented Politan and later Masimo. (Swartz Second Decl. ¶ 3.) Swartz is now a partner at Quinn Emanuel, another multi-national law firm, which has assumed representation of Masimo in this action. (Id. ¶¶ 2, 16; Declaration of Kerri Riley ("Riley Decl."), Dkt. No. 207-1, ¶ 9.)

#### 2. Proxy Contest and Alleged Empty Voting

Masimo alleges that to save his seat in a 2024 proxy contest with Politan, Kiani "colluded" with RTW Defendants. (FAC ¶¶ 1, 34.) More specifically, Masimo claims that because RTW Defendants originally had only a 2.8% stake in Masimo, they engaged in an "empty voting" scheme in order to artificially inflate RTW Defendants' voting power. (Id. ¶ 39.) RTW Defendants increased their shares to 9.9% by June 13, 2024

---

[2] The Court highlights that Adriana Schwartz and Michael Swartz have different last names and there is no relation between them. (Swartz & Quinn Opp'n at 4 n.4).

("June Record Date"), and with Kiani's 9.1%, held together 19% of Masimo's securities. (Id. ¶¶ 41–46, 50.) Masimo alleges that RTW Defendants "took on no additional economic risk" when their position spiked by approximately three million shares prior to the June Record Date because they were short selling—they borrowed shares from BlackRock and "sold short an equivalent number of shares to offset any economic risk that came from increasing its long position." (Id. ¶¶ 4, 54–58.) When the record date moved to August, RTW Defendants repeated this scheme to increase their voting power in the proxy contest. (Id. ¶ 10.)

Ultimately, on September 19, 2024, Politan's nominees were elected, and Kiani immediately tendered his resignation. (Memorandum of Law ("Schulte Memo"), Dkt. No. 94, at 13) By September 30, 2024, RTW Defendants disposed of their additional shares. (FAC ¶ 90.)

On October 25, 2024, Masimo filed this action, seeking Kiani and RTW Defendants' compliance with Section 13(d) of the Securities Exchange Act and RTW's disgorgement of their short-swing profits pursuant to Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"). (Id. ¶ 13.)

3. Legal Representation

In November 2021, RTW Clients retained Schulte to advise them on regulatory and securities matters related to investment, including Sections 13 and 16 of the Exchange Act. (Declaration of Alice Lee ("Lee Decl."), Dkt No. 95, ¶¶ 4–5; Lee Decl., Ex. L ("Engagement Letter"), Dkt. No. 95-1, at 1.) Their Engagement Letter included an advance waiver of conflicts of interest permitting Schulte to represent clients "directly adverse" to RTW Clients, including "on opposite sides of a litigation or proceeding." (Engagement Letter at 5). Schwartz was the Schulte attorney "primarily responsible for the RTW account." (Memorandum of Law ("Swartz & Quinn Memo"), Dkt. No. 186-1, at 3; see Schwartz Decl. ¶¶ 20–24.)

Shortly before Schulte's representation of RTW Clients, Swartz and Schulte were engaged by Politan in July 2021. (Declaration of Michael E Swartz ("Swartz First Decl."), Dkt. No. 111, ¶ 6.) Schulte and Swartz subsequently represented Politan in its proxy contest to elect new board members on Masimo's board in 2024. (Id.) This included suing Kiani in the Delaware Court of Chancery and issuing a third-party

subpoena on RTW Clients. (Swartz Second Decl. ¶ 5.)

On July 3rd of the same year as Schulte's representation of Politan in the proxy contest, Senior Counsel for RTW Clients, Alice Lee, called Schwartz for advice related to RTW Clients' investment holdings and empty voting. (Lee Decl. at 2–3.). When Lee disclosed that her questions were in relation to the Masimo proxy contest, Schwartz informed Lee that she could not provide advice related to Masimo due to a conflict at the firm. (Lee Decl. ¶ 7;Schwartz Decl. ¶¶ 29–31.)

Despite knowledge of a potential conflict, Schulte did not erect an ethical wall around Schwartz until August 27, 2024, when Swartz conducted a conflicts check before filing a third-party subpoena on RTW Clients. (Swartz Second Decl. ¶ 5–6.) As lead partner for the Politan matter, Swartz was then barred from receiving information related to RTW Clients or discussing anything related to Politan, Masimo, or RTW Clients with Schwartz or other attorneys on the RTW Clients advisory matter. (Id. ¶ 8.)

After Politan's successful proxy battle, Masimo engaged Swartz and Schulte to represent it in this action filed against RTW Defendants in October 2024 in the Southern District of New York ("SDNY"). (Id. ¶ 7.) Schulte refused RTW Client's request to voluntarily withdraw. (Declaration of Sanford L. Michelman ("Michelman Decl."), Dkt. No. 96, ¶¶ 4–6.) RTW Defendants then moved to disqualify Schulte in December 2024. (Schulte Mot.)

In March 2025, Swartz left Schulte to join Quinn Emanuel. (Swartz Second Decl. ¶ 2.) Shortly thereafter, Masimo signed an engagement letter with Quinn Emanuel to represent it in this action on April 7, 2025. (Riley Decl. ¶ 9.) After the action was transferred to this Court, all of the remaining Schulte attorneys gave notice that they would not be appearing for Masimo. (Responses, Dkt. Nos. 173–76.) Only Quinn Emanuel attorneys remain in the action and Swartz is the only former Schulte attorney who has appeared for Masimo since transfer. (Id.; Application of Non-Resident Attorney ("Swartz Appl."), Dkt. No. 171; Notices of Appearance, Dkt. Nos. 196–98).

*B. Procedural Background*

Masimo filed this action in SDNY on October 25, 2024, against Kiani and RTW Defendants. (Complaint, Dkt. No. 1.) On December 23, 2024, RTW Defendants moved to disqualify Schulte as counsel for Masimo. (Schulte Mot.) Kiani and RTW Defendants filed their motions to dismiss, or in the alternative to transfer venue, in January 2025. Although venue was proper in SDNY, the district court for SDNY granted RTW Defendants' motion to transfer to this Court on April 3, 2025 for the convenience of the parties in the interest justice under 28 U.S.C. § 1404(a). (Order Granting Transfer, Dkt. No. 140.) RTW Defendants then moved to disqualify Swartz and Quinn Emanuel as counsel for Masimo on July 14, 2025, with the parties agreeing to delay hearing until after the Court considered the motions to dismiss. (Swartz & Quinn Mot.) In August 2025, Masimo voluntarily dismissed Kiani under Rule 41(a), (Notice, Dkt. No. 194), and the Court denied RTW Defendants' remaining motion to dismiss, (Order, Dkt. No. 203).

## II. CHOICE OF LAW

As a preliminary matter, the Court must determine whether to apply California or New York law to these motions to disqualify. In the Ninth Circuit, state law governs motions to disqualify. See In re Cnty. of L.A., 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."). Additionally, when a case is transferred for the convenience of the parties, "[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (finding that a transferee court is "obligated to apply the state law that would have been applied if there had been no change in venue"); see also Eolas Tech. Inc. v. Amazon, Inc., 2017 WL 3641831, at *1–2 (N.D. Cal. Aug. 24, 2017) (applying Texas law to a motion to disqualify after a change in venue under § 1404(a)).

Here, failure to apply New York law would violate the principle in Van Dusen that defendants do not get to change applicable law just by transferring venue. See Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1046 (9th Cir. 2012) (requiring transferee courts to apply the state law of a transferor court when interpreting federal statutes that borrow from analogous state laws). The original briefing and location of relevant parties show

that the parties fully expected New York law to govern the alleged conflicts of interest prior to transfer. The motion to disqualify Schulte was filed and fully briefed applying New York and Second Circuit law while this case was properly venued in SDNY. (See Schulte Mot.; Schulte Opp'n; Schulte Reply). Further, RTW Investments, LP is a New York–based hedge fund manager and retained Schulte, a New York–based law firm, for advice related to their investments. (See Lee Decl. at 1; Engagement Letter at 1.) Swartz, whose alleged conflict is at the core of both motions, is a New York–barred attorney who practiced in Schulte's New York office and now practices out of Quinn Emanuel's New York office. (See Swartz Appl.; Swartz Second Decl. at 1.) It was not until this case was transferred under § 1404(a) that RTW Defendants introduced California law, even though all of the alleged activity creating a conflict occurred in New York. (See Swartz & Quinn Mot.)

Accordingly, the Court applies New York law to both motions to disqualify.[3]

## III. Legal Standard

In the Ninth Circuit, the decision to disqualify counsel is within the trial court's discretion and limited by applicable legal principles. See Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).[4] Due to the potential for abuse, motions to disqualify are subject to strict judicial scrutiny. Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985). The moving party carries a "heavy burden and must satisfy a high standard of proof." Gotham City Online, LLC v. Art.com, Inc., 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014) (citing Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir.1983)). Nonetheless, it is the Court's duty to "maintain ethical standards of professional responsibility." Id.

---

[3] Although the motion to disqualify Swartz and Quinn Emanuel came after this action was transferred to the Central District of California, it hinges on the same conduct alleged in the first motion, so applying New York law throughout is appropriate.

[4] While the Court must apply New York law to the conflicts of interest in alleged in this case, it is still bound by the Ninth Circuit's guidance on how to approach disqualification.

## IV. DISCUSSION

*A. Swartz*

1. Did RTW Clients Waive the Alleged Conflict?

The crux of this Motion is Swartz's alleged conflict of interest as lead attorney for Masimo. Although Swartz has left Schulte for Quinn Emanuel, (Swartz Second Decl. ¶ 2), he may nonetheless be subject to disqualification for his prior association with Schulte under a concurrent representation analysis.[5] No determination is necessary, however, if RTW Clients effectively waived their right to move for disqualification under the Engagement Letter with Schulte. Any advance waiver would necessarily include the future activities of the firm and its partners, including Swartz.

Under New York Rule of Professional Conduct 1.7, a lawyer must receive a client's "informed consent, confirmed in writing" before representing another party with adverse interests to that current client. N.Y. Rule Pro. Conduct ("Rule") 1.7, 1.9. However, advance waiver for concurrent representation conflicts that might arise in the future may be effective when a client "reasonably understands risks that the waiver entails." Rule 1.7 cmt. 22; see also McGuire v. McGuire Grp., Inc., 237 A.D.3d 1535, 1539 (2025) (finding waiver where the party understood "the relevant implications, advantages and risks of providing such consent."). Where a client is an "experienced user of the legal services involved" and is represented by in-house counsel, "even general and open-ended waivers . . . may be effective." Rule 1.7 cmt. 22; see also IBM Corp. v. Micro Focus (US), Inc., 676 F. Supp. 3d 263, 281–82 (S.D.N.Y. 2023) (finding advance consent to concurrent representation by a "sophisticated user of legal services" under Rule 1.7(b)).

Here, there is no doubt that RTW Clients, a hedge fund manager and its affiliates, are sophisticated users of the investment advisory services it sought from Schulte and multiple other law firms. (Schwartz Decl. ¶ 21.) The Engagement Letter was extensively negotiated by in-house counsel capable of advising RTW Clients of the risks

[5] The Court agrees with both parties that courts should evaluate a conflict of interest at the time it arose, not when it is adjudicated. See Netlist, Inc. v. SK hynix Inc., 2016 WL 8905079, at *4 (C.D. Cal. Dec. 5, 2016).

of signing the waiver. (Supplemental Declaration of Alice Lee ("Supp. Lee Decl."), Dkt. No. 129, ¶¶ 3–9; Schwartz Decl. ¶ 9–15.) RTW Clients even identified and required the inclusion of specific parties that Schulte would not represent without prior written consent. (Schwartz Decl. ¶¶ 10–15; Engagement Letter at 4.)

The Engagement Letter also informed RTW Clients of the conflicts that they were agreeing to waive, including the situation here. The Engagement Letter states that Schulte "would not be disqualified . . . from representing another client in a litigation or other proceeding that is adverse to you as long as the Firm is not then representing you in that matter." (Engagement Letter at 4). The crux of the issue that parties dispute is whether Schulte's representation of Masimo against RTW Defendants constitutes the same "matter" as legal services provided to RTW Defendants under the Engagement Letter.

RTW Clients seek to construe "matter" under the advance waiver of conflicts as the "Matter" as defined on page one of the Engagement Letter: "to represent and advise . . . in connection with general investment advice, securities law and related matters." (Engagement Letter at 1; see Swartz & Quinn Memo at 17.) The Court agrees with Masimo that this broad interpretation of "matter" under the advance waiver would lead to an absurd result by rendering the waiver virtually useless, preventing representation against RTW Clients, a hedge fund manager, for any matter related to a topic of "general investment advice." See e.g., Saffire Corp. v. Newkidco, LLC, 286 F. Supp. 2d 302, 308 (S.D.N.Y. 2003) ("Under traditional contract interpretation rules, a provision may not be interpreted in a manner which would render it an absurdity.") Further, had the parties intended for this meaning of "matter" to apply, they would have used the defined term "Matter" from the Engagement Letter, which they did not. (Engagement Letter at 4.)

Nonetheless, the allegations of violations of Sections 13 and 16 of the Exchange Act brought by Schulte on behalf of Masimo could still be the same "matter" under the advance waiver if Schulte provided advice to RTW Clients on their actions underlying these allegations. RTW Clients primarily point to two successive phone calls lasting a total of 14 minutes with a Schulte attorney as evidence of Schulte's representation of

them in relation to the alleged empty-voting scheme at issue in this action.[6] (Schulte Memo at 10; see Lee Decl. ¶ 7.) During this call, Lee, in-house counsel for RTW Clients, contacted Schwartz, a transactional partner at Schulte, to discuss whether "securities laws require parity between a shareholder's voting power and its economic exposure." (Lee Decl. ¶ 6.) Schwartz had never provided advice to RTW Clients on this topic before, but provided a "generic" explanation of empty-voting and emailed a press release about a past SEC enforcement action against another investment firm. (Schwartz Decl. ¶ 28). When Lee disclosed that her inquiry was in relation to RTW Clients' holdings in Masimo, Schwartz immediately informed Lee that Schulte could not provide advice specific to those holdings due to a conflict of interest, and the call ended. (Lee Decl. ¶ 7; Schwartz Decl. ¶¶ 29, 31.)

While the advice provided by Schwartz was generically relevant to Masimo's eventual allegations, no information specific to RTW Clients' holdings in Masimo was disclosed during this call and Schwartz did not provide legal advice at that time or any point in the future on RTW Clients' Masimo holdings.[7] (Schwartz Decl. ¶ 31; Lee Decl. ¶ 7.) The Court agrees with Masimo that this brief phone call did not amount to representation in the same "matter" that Schulte represented Masimo in and therefore does not defeat the advance waiver.

In the Engagement Letter, Schulte also agreed to "adhere[] to its professional obligation not to disclose any confidential information or
to use it for another party's benefit." (Engagement Letter at 4.) To the extent any confidential information was disclosed in the phone call or through general representation between Lee and Schwartz, Schwartz has attested that she did not reveal any relevant information about RTW Clients to any litigators representing Masimo at the firm. (Swartz Second Decl. ¶¶ 11–13; Adams Decl. ¶ 10; Schwartz Decl. ¶ 36.) Additionally, after the call with Lee, Schulte placed an ethical wall around Schwartz to

---

[6] While RTW Clients argue that Schulte previously advised them on matters related to Section 13 and 16 issues, (Schulte Memo at 9–10, 18–19), they fail to show how this advice specifically relates to the allegations made by Masimo or revealed confidential information used against them in this action.

[7] It also bears noting that this July 3, 2024 call occurred *after* RTW Clients allegedly built up their Masimo holdings for the initial June 13, 2024 record date and voted those shares on July 1, 2024. (FAC ¶¶ 65–69.)

prevent the passage of information between Schwartz and Masimo/Politan's litigation team. (Schwartz Decl. ¶ 35.) The wall was implemented around two months after the Lee/Schwartz call when Swartz ran a conflicts check in relation to the Masimo/Politan litigation that revealed the firm's relationship with RTW Clients to him. (Swartz Second Decl. ¶ 6.) The lack of disclosure of confidential information and eventual information barrier satisfied Schulte's obligations to RTW Clients under the Engagement Letter.

As a sophisticated user of legal services, RTW Clients understood well the risks of signing an advance waiver. So long as Schulte did not represent an adverse party in a matter in which they represented RTW Clients and did not use RTW Clients' confidential information against them, the advance waiver forfeited RTW Clients' right to assert Schulte's representation of them "as a basis for disqualifying the Firm from representing another client of the Firm in any such other matter." (Engagement Letter at 4.) Because Schulte did neither, the Court finds the advance waiver in the Engagement Letter effective under New York law, constituting the informed, written consent necessary under Rule 1.7.[8]

Swartz's activity was necessarily covered under the terms of the advance waiver as a partner at Schulte. Swartz's conduct was therefore non-disqualifiable under the same analysis completed for Schulte, and does not become disqualifiable simply because he has left the firm and joined Quinn Emanuel during the course of this litigation. <u>See</u> <u>Netlist</u>, 2016 WL 8905079, at *4 ("[A] court should evaluate the conflict of interest at the time it arose."). Accordingly, the Court DENIES RTW Defendants' motion to disqualify Swartz.

*B. Schulte*

As noted above, all attorneys actively associated with Schulte have withdrawn from this action. (Responses, Dkt. Nos. 173–76; <u>see also</u> Swartz & Quinn Memo at 10.) However, to the extent that Schulte might remain informally involved in this litigation,

---

[8] The other requirements under Rule 1.7(b) were not directly disputed by the parties and are satisfied as well. Schulte's concurrent representation of Masimo was neither prohibited by law nor involved representing two adverse clients in the same litigation. Additionally, it was reasonable for Schulte to believe they could provide "competent and diligent representation," Rule 1.7(b)(1), given the informational safeguards and lack of information specific to RTW Clients' Masimo holdings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-03188-JVS-JDE | Date | September 24, 2025 |
| Title | Masimo Corporation v. Joe E. Kiani et al | | |

the Court finds that the foregoing advance waiver analysis applied to Swartz as a partner also applies to Schulte as a firm. Accordingly, the Court DENIES RTW Defendants' motion to disqualify Schulte.

*C. Quinn Emanuel*

Because the Court finds that Swartz has no disqualifiable conflict, there is no conflict to impute to Quinn Emanuel. The Court therefore DENIES RTW Defendants' motion to disqualify Quinn Emanuel.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** the motions to disqualify Masimo's counsel.

**IT IS SO ORDERED.**